Westwood, Appellant, *v.* Thrifty Boy Super Markets, Inc., et al., Appellees.

(No. 71-95—Decided February 9, 1972.)

*Messrs. Rudd, Zachritz & Silverberg* and *Mr. J. Gordon Rudd*, for appellant.

*Messrs. Young & Alexander* and *Mr. Robert C. Alexander*, for appellee Thrifty Boy Super Markets, Inc.

*Messrs. Estabrook, Finn & McKee* and *Mr. Robert P. Bartlett*, for appellee Hunter Savings Association.

SCHNEIDER, J.  The question before us is whether the defense of assumption of risk is available to an "employer," as defined in R. C. 4101.01(C),[1] in an action against him brought by a "frequenter," as defined in R. C. 4101.-01(E),[2] alleging a violation of R. C. 4101.11[3], a safe-place statute.  We hold that the defense is available and, therefore, affirm.

By statutory definition, "frequenter" embraces business invitee, and "employer" is equivalent to an owner or occupier of premises.  Concededly, at the time of her injuries, appellant was on the premises of appellees as a frequenter or business invitee and appellees were the owner and occupier, respectively, of those premises.

R. C. 4101.11 is no more than a codification of the common-law duty owed by the owner or occupier of premises to business invitees to keep his premises in a reasonably safe condition and to give warnings of latent or concealed perils

---

[1]R. C. 4101.01(C) reads:

" 'Employer' means every person, firm, corporation, agent, manager, representative, or other person having control or custody of any employment, place of employment, or employee."

[2]R. C. 4101.01(E) reads:

" 'Frequenter' means every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."

[3]R C. 4101.11 reads:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the *employees* therein *and* for *frequenters* thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and *shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.*"  (Emphasis supplied.)

of which he has, or should have, knowledge. *Debie* v. *Cochran Pharmacy-Berwick* (1967), 11 Ohio St. 2d 38, 42; *Sidle* v. *Humphrey* (1968), 13 Ohio St. 2d 45; *Holdshoe* v. *Whinery* (1968), 14 Ohio St. 2d 134. Furthermore, that the defense of assumption of risk was available at common law in an action by an invitee against an owner or occupier of premises cannot be seriously questioned. See *Masters* v. *New York Central Rd. Co.* (1947), 147 Ohio St. 293; *Davis* v. *Charles Shutrump & Sons Co.* (1942), 140 Ohio St. 89; *Plas* v. *Holmes Construction Co.* (1952), 157 Ohio St. 95; 39 Ohio Jurisprudence 2d 615 *et seq.*, Section 80 *et seq.*

The first paragraph of the syllabus of *Plas,* approving and following *Davis,* both of which were decided long after the adoption of the predecessor of R. C. 4101.11, held:

"In an action by a contractor's employee against a contractee for injuries resulting from the condition of the premises of the contractee . . . his assumption of the risks arising from those conditions constitute valid defenses." In both *Plas* and *Davis,* the contractor's employee fell squarely within the definition of a "frequenter" under R. C. 4101.01(E), but the actions were not based on R. C. 4101.11.

Three years before employees and employers were accorded the benefits, as well as the detriments, of the Workmen's Compensation Act (103 Ohio Laws 72), the General Assembly, by enacting what is now R. C. 4113.06[4] in 1910, withdrew the defense of assumption of risk only from actions described in R. C. 4113.03, that is, employee-em-

---

[4] R. C. 4113.06 reads, in part:

"*When it appears in an action described in Section 4113.03 of the Revised Code* that the injury or death was caused in whole or in part by the neglect of the employer . . . the *fact that such employee continued in said employment with knowledge of such negligent omission or want of care or such defective or unsafe condition is not a defense* unless by the terms of his employment it was expressly made the duty of such employee to report such neglect or such defective or unsafe condition to the employer and the evidence discloses that such employee failed so to report, and that the employer was not otherwise possessed of knowledge of such negligent, unsafe, or defective condition." (Emphasis supplied.)

ployer actions. The legislative purpose undoubtedly was to remedy the inequality in bargaining power between an employee and his employer. If the employee were compelled by contract to work under unsafe conditions, the employer should not be permitted to escape liability which he created by pleading assumption of risk. See *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Kinney* (1916), 95 Ohio St. 64, and *Ford Motor Co.* v. *Tomlinson* (1956), 229 F. 2d 873. But, even this policy was not carried over into R. C. Chapter 4101, the antecedents of which were first adopted in 1913 (103 Ohio Laws 95). Thus, no language in the entirety of R. C. Chapter 4101 even purports to abolish any common-law defense in either employee or frequenter actions brought under that chapter.

We hold, therefore, that in the absence of a statute abrogating the common-law defense of assumption of risk, the defense remains available in an action brought either at common law or under R. C. 4101.11.

Appellant's second proposition of law states:

"Where one of the duties imposed upon . . . [appellant] . . . involves the daily purchase of groceries from a supermarket located directly across the street from the restaurant, appellant as a matter of law did not voluntarily assume a known risk by walking across the supermarket parking lot. . . ." We disagree.

In *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166, we noted that for the defense of assumption of risk to apply, one ". . . must voluntarily expose himself to the hazard created."[5] See *Wever* v. *Hicks* (1967), 11 Ohio St. 2d 230.

---

[5] In *Briere* v. *Lathrop Co.* (1970), 22 Ohio St. 2d 166, we assumed the availability of the defense of assumption of risk where a failure to maintain a safe-place to work was claimed, due to the jury's specific determination of defendant's negligence.

However, we held that where an employee of an independent contractor is injured while working on the job of defendant contractor, and "conflicting evidence is presented regarding the danger . . . [involved], a jury question is presented as to whether plaintiff assumes the risk of injury. . . ."

There is no evidence in the record to show that appellant was compelled by her employer to traverse appellees' parking lot regardless of the hazards known to her. Furthermore, appellant had sufficient knowledge of the danger to support the jury's finding that she voluntarily exposed herself to the hazard created.

We find, therefore, no error prejudicial to appellant.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, SILBERT, CORRIGAN, STERN and LEACH, JJ., concur.

SILBERT, J., of the Eighth Appellate District, sitting for DUNCAN, J. JUDGE SILBERT of the Court of Appeals was, pursuant to Section 2 of Article IV of the Constitution of Ohio, duly directed by the Chief Justice "to sit with the justices of the Supreme Court in the place and stead of" JUSTICE DUNCAN and JUDGE SILBERT did so and heard and considered this cause prior to the resignation of JUSTICE DUNCAN on November 28, 1971.