DAVENPORT, Appellant,

v.

M/I SCHOTTENSTEIN HOMES, INC., Appellee.*

[Cite as *Davenport v. M/I Schottenstein Homes, Inc.* (1993), 96 Ohio App.3d 237.]

Court of Appeals of Ohio,
Hamilton County.

No. C-920142.

Decided July 28, 1993.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was dismissed as having been improvidently allowed in (1994), 71 Ohio St.3d 1204, 642 N.E.2d 382.

*Kircher, Robinson, Cook, Newman & Welch* and *Robert B. Newman,* for appellant.

*Bloom & Greene Co., L.P.A., Lawrence A. Flemer* and *Michael E. Finucane,* for appellee.

*Per Curiam.*

Plaintiff-appellant Thomas A. Davenport was employed as an electrician by C & H Electric Company ("C & H"). C & H contracted with defendant-appellee M/I Schottenstein Homes, Inc. ("Schottenstein") for the installation of electrical service and wiring in new homes constructed by Schottenstein in the Beckett Ridge development. Davenport worked on a home in the development for a full day, "roughing in" the electrical wiring. "Roughing in" consists of drilling holes in the studs, pulling the wire through the holes, and installing light switches and electric boxes. On a trip to the basement, Davenport observed that the basement floor was covered with about four inches of water which had accumulated due to rainfall. Davenport overheard a conversation between his employer and a representative of Schottenstein concerning pumping the water out of the basement. Davenport stated that Schottenstein's representative promised to have the water pumped out of the basement. No indication was given as to when the water would be pumped out. Davenport knew that the wiring for the sump pumps had not yet been installed.

The next day, May 15, 1990, Davenport and another worker returned to the house to finish the wiring. Davenport went down to the basement to thread wire through the floor joists. The basement steps consisted of stair stringers without handrails. Davenport made about ten trips up and down the steps that morning, tracking water from the basement onto the steps. On his first trip to the basement after lunch, Davenport descended about five steps, slipped and fell down the stairs, sustaining injuries.

Davenport filed the within complaint for personal injuries and economic loss, alleging that Schottenstein had violated R.C. 4101.11, the frequenter statute. Schottenstein filed a motion for summary judgment which the trial court granted. Davenport timely appealed.

■■■■■■■■

Pursuant to R.C. 4101.01(E), Davenport, as an employee of a subcontractor engaged to perform work on the general contractor's premises, was a frequenter.[1] The duty owed by an employer to frequenters under R.C. 4101.11 and 4101.12,[2] Ohio's safe-place-to-work and frequenter statutes, is no more than a codification of the common-law duty owed by a landowner to invitees, which requires that the premises be kept in a reasonably safe condition and that the owner give warning of dangers of which he has or reasonably should have knowledge. *Eicher v. United States Steel Corp.* (1987), 32 Ohio St.3d 248, 512 N.E.2d 1165; *Westwood v. Thrifty Boy Super Markets, Inc.* (1972), 29 Ohio St.2d 84, 58 O.O.2d 154, 278 N.E.2d 673; *Wray v. Cincinnati Gas & Elec. Co.* (Dec. 2, 1987), Hamilton App. No. C–860779, unreported, 1987 WL 25501. A landowner is under no duty to protect a business invitee from dangers " 'which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.' " *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 204, 18 OBR 267, 268, 480 N.E.2d 474, 475, quoting *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus; *Pelfrey v. Union Oil Co.* (Sept. 23, 1988), Wood App. No. WD–87–74, unreported, 1988 WL 98236; *McRoberts v. Value City, Inc.* (Sept. 23, 1987), Hamilton App. No. C–860855, unreported, 1987 WL 17263. In order to hold a landowner liable, it must be shown that he had superior knowledge of the dangers of the property. See *Debie v. Cochran Pharmacy–Berwick, Inc.* (1967), 11 Ohio St.2d 38, 40 O.O.2d 52, 227 N.E.2d 603; *Kahle v. The Burroughs Corp.* (Sept. 2, 1988), Lucas App. No. L–88–065, unreported, 1988 WL 91335. If an invitee knows of a dangerous condition, he will be held to have assumed the risk of injury from that condition. *Cyr v.*

---

1. R.C. 4101.01(E) provides:

" 'Frequenter' means every person, other than an employee, who may go in or be in a place of employment under circumstances which render him other than a trespasser."

2. R.C. 4101.11 provides:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

R.C. 4101.12 states:

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

*Bergstrom Paper Co.* (1982), 3 Ohio App.3d 299, 3 OBR 345, 444 N.E.2d 1349. "Where a frequenter, as defined in R.C. 4101.01(E), voluntarily and with knowledge of an existing danger enters the premises of an employer, as defined in R.C. 4101.01(C), the defense of assumption of risk is available to such employer in an action by the frequenter alleging a violation of R.C. 4101.11, safe-place statute." *Westwood v. Thrifty Boy, supra,* paragraph two of the syllabus.

■ In the case *sub judice,* the water had accumulated in the basement due to rainfall, not through any action on the part of Schottenstein. Such an accumulation of rain water would not be unexpected on a construction site. It is clear from Davenport's deposition that he was fully aware of the water in the basement. In addition, he created the dangerous condition on the stairs by tracking water up and down on his trips to and from the basement on the morning of his fall. Davenport admitted in his deposition that the water he tracked onto the stairs caused his fall.

Davenport's fall resulted from the open and obvious condition of the wet stairs, a condition of which he was fully aware and, in fact, created. Schottenstein had no duty to protect Davenport from or warn him of a condition so open and obvious that he discovered it and, therefore, could reasonably have been expected to protect himself from it.

Davenport argues that the trial court erred in failing to apply the syllabus of *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, which holds:

"An employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities."

*Cremeans* is a products liability case involving strict liability in tort. The defendant, Willmar Henderson Manufacturing Co., manufactured a front-end loader without a protective cage for the operator. Cremeans's job required him to drive the loader into a bin filled with fertilizer, retrieve the load and back the loader out of the bin. The loader would not fit into the bin with a protective cage. Cremeans was injured when an avalanche of fertilizer fell on the loader. A protective cage would have prevented Cremeans's injury. The Ohio Supreme Court held that Cremeans had not voluntarily accepted the risk of injury, citing the economic necessity of an employee to undertake risky tasks imposed by an employer.

■ We hold that the trial court did not err in refusing to apply *Cremeans* to the instant case. Initially, we note that *Cremeans* involved strict products liability while the case *sub judice* involves premises liability under the frequenter

statute. In addition, Willmar owed a duty to Cremeans not to place a defective product into the stream of commerce, while Schottenstein had no duty to warn Davenport of or protect him from an open and obvious condition. Further, Davenport failed to show the type of economic necessity to undertake a risky task as was present in *Cremeans*. Davenport testified as follows regarding whether he was compelled by his employer to work in the wet basement:

"Q. Did you have any indication [*sic*] with Mr. Cain on the morning of the accident as to whether you personally should or should not work in the basement since it was wet?

"A. No, sir, not directly with that. It was always discussed that we would do them as they would come or there was a chance that we would lose the subdivision. He had already lost one subdivision for not completing his work, not there when they needed him, and that would have been Clayborn and that was something that we all knew about, so it was just you go in, do your job and you get out.

"Q. I'm asking you a specific question.

"A. No, sir. In answer to your question, no, sir we did not discuss that that morning.

" * * *

"Q. So you just went out to the truck that morning, got your boots and proceeded to start working in the basement because you assumed that he expected, Mr. Cain expected you to finish that house that day; is that fair?

"A. Wasn't really an assumption, it was a knowledgeable thought would be a better statement.

"Q. But it was something that you thought about without really talking to him about it, is that accurate?

"A. I think we both knew where each other stood, but, yes, sir, that would be an accurate statement."

We hold that Davenport failed to demonstrate the level of economic coercion to undertake a risky task as was present in *Cremeans*.

We find no error in the trial court's granting of summary judgment in favor of Schottenstein. The assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., and DOAN, J., concur.

M.B. BETTMAN, J., concurs in judgment only.

M.B. BETTMAN, Judge, concurring in judgment only.

Appellant invites us in the instant case to apply *Cremeans v. Willmar Henderson Mfg. Co.* (1991), 57 Ohio St.3d 145, 566 N.E.2d 1203, a products liability case, to workplace injuries under the safe-workplace statute. I believe that such an extension of the law is consistent with the philosophy of the court expressed in *Cremeans*.

The syllabus of *Cremeans*, in which a majority of the court concurred, is by no means limited to products liability cases. It holds that:

"An employee does not voluntarily or unreasonably assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal performance of his or her required job duties and responsibilities."

As written, this holding could quite fairly be applied to the facts of the case before us. Coming before us as it does on Schottenstein's motion for summary judgment, the record at this point, consisting of Davenport's testimony, is undisputed that Davenport believed he had two days to finish the job on which he was injured; knew that C & H had lost other jobs for failing to work fast enough; and avoided working in the basement on the first day because of the standing water in the basement which Schottenstein had promised to pump out. The next day he believed he had no choice in order to finish the job except to work in the basement where the water had not been pumped out, and to walk up and down the basement stairs tracking the water with him.

Unlike my colleagues, I believe a question of fact exists about whether Schottenstein breached a duty to Davenport under the safe-workplace statute. I do agree with my colleagues that if a frequenter, like a business invitee, knew of a dangerous condition, he would be held to have assumed the risk of injury from that condition. However, if *Cremeans* is applied to this workplace injury, the defense of assumption of risk would not be available to Schottenstein. I believe that before this court can countenance such an extension of the law as appellant requests, the Supreme Court must first expressly address paragraph two of the syllabus of *Westwood v. Thrifty Boy Super Markets, Inc.* (1972), 29 Ohio St.2d 84, 58 O.O.2d 154, 278 N.E.2d 673, which holds as follows:

"Where a frequenter, as defined in R.C. 4101.10(E), voluntarily and with knowledge of an existing danger enters the premises of an employer, as defined in R.C. 4101.01(C), the defense of assumption of risk is available to such employer in an action by the frequenter alleging a violation of R.C. 4101.11, safe-place statute."

That the holding in *Cremeans* is to be broadly read is reinforced in Justice Douglas's analysis for a plurality of the court:

" * * * We realize that our holding 'abolishes' assumption of risk in the employment setting in the sense that the defense of assumption of risk is unavailable for certain claims arising from work-related injuries. To that extent, we are in complete agreement with the conclusion of one commentator on this issue, and we can state it no better than she did in writing that:

" 'The decision to abolish assumption of risk in the employment setting is grounded in economic reality and a sense of humanity consistent with present social policy. Since assumption of risk is a judicial creation, the courts should take responsibility for removing the doctrine from areas in which it plays no useful or just function. The employment setting is one of these areas, and in the face of increasing numbers of work-related injuries, courts should eliminate the doctrine as an anachronism.' [See] Comment, [Employees' Assumption of Risk: Real or Illusory Choice? (1984), 52 Tenn.L.Rev. 35,] at 65." *Cremeans v. Willmar Henderson Mfg. Co., supra,* 57 Ohio St.3d at 149, 566 N.E.2d at 1207.

While not in the syllabus, an analysis of the economic realities of the workplace permeates the *Cremeans* decision. Here there is a difference of opinion among the members of the court concurring in the syllabus. Two members of the court would virtually make assumption of the risk unavailable as a defense if a worker is injured on the job from a defective product. Two others would allow the defense where the employee elects to use a defective product, but not where the employee is forced to use the product by economic necessity. See *Syler v. Signode* (1992), 76 Ohio App.3d 250, 601 N.E.2d 225, for an excellent analysis of *Cremeans.* Hopefully consensus can be reached on this point especially if *Cremeans* is extended to the workplace in situations other than those involving defective products, such as the one before us.

For reasons of *stare decisis,* I concur in the judgment affirming the trial court.