KUCHARSKI, APPELLANT, *v.* NATIONAL ENGINEERING
& CONTRACTING COMPANY, APPELLEE.

[Cite as *Kucharski v. Natl. Eng. & Contracting
Co.* (1994), 69 Ohio St.3d 430.]

(No. 93–225—Submitted February 2, 1994—Decided June 15, 1994.)

*Endress & Endress Co., L.P.A., Richard R. Endress* and *Jeffrey C. Endress,* for appellant.

*Arter & Hadden* and *Irene C. Keyse–Walker,* for appellee.

*Schottenstein, Zox & Dunn* and *Roger L. Sabo,* urging affirmance for *amicus curiae,* Ohio Contractors Association.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy,* urging reversal for *amicus curiae,* Ohio AFL–CIO.

WRIGHT, J. The narrow issue we will decide in this matter is whether R.C. 4101.13 may be used as the basis of a negligence suit by an employee of one independent contractor against a second independent contractor working on a common building site, when the parties lack both a contractual relationship and control of each other's employees. We hold that it may not.

Kucharski argues that because National employees removed the temporary guardrails, National may properly be found liable for negligence pursuant to R.C. 4101.13. This argument has no merit.

R.C. 4101.13 states:

"No *employee* shall remove, displace, damage, destroy, or carry off any safety device or safeguard furnished or provided for use in any employment or place of employment, or interfere in any way with the use thereof by any other person. No *employee* shall interfere with the use of any method or process adopted for the protection of any employee in such employment or place of employment, or frequenter of such place of employment, or fail to follow and obey orders and to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." (Emphasis added.)

R.C. 4101.13 and its companion provisions, R.C. 4101.11 [1] and 4101.12,[2] are commonly referred to as the "frequenter" statutes. Originally enacted to benefit

---

1. R.C. 4101.11 states:

"Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters."

2. R.C. 4101.12 states:

employees, these statutes are "no more than a codification of the common-law duty owed by the owner or occupier of premises to business invitees to keep his premises in a reasonably safe condition and to give warnings of latent or concealed perils of which he has, or should have, knowledge." *Westwood v. Thrifty Boy Super Markets, Inc.* (1972), 29 Ohio St.2d 84, 86, 58 O.O.2d 154, 156, 278 N.E.2d 673, 675. The subsequent passage of the Ohio Workers' Compensation Act, which protected covered employers from damage suits brought by employees injured on the job, rendered these statutes largely obsolete. *Ford Motor Co. v. Tomlinson* (C.A.6, 1956), 229 F.2d 873, 879. They continue to be used, however, by injured employees of subcontractors who seek damages, in addition to workers' compensation benefits, from the property owners, or contractors in privity with their employers, who fail to keep the property safe from hazards for "frequenters."

We defined exactly what duty of care a general contractor owes to its subcontractors in *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189. The *Cafferkey* case involved the decision of the subcontractor to lower two employees into a two-hundred-foot-deep caisson hole, despite an earlier detection of methane gas there, to burn off with a cutting torch a portion of a twisted metal casing. The general contractor, which retained supervisory authority over its subcontractors, was not informed about the subcontractor's decision. An explosion occurred in the hole when one of the employees struck a flint to light his torch. Both were severely burned and later died as a result of their injuries. Affirming a grant of summary judgment in favor of the defendant general contractor, this court held that a general contractor must actively participate in a subcontractor's work before it becomes susceptible to liability for injuries sustained by the subcontractor's employees who were engaged in inherently dangerous work. A general contractor does not owe a duty of care to the employees of a subcontractor "merely by virtue of its supervisory capacity." *Id.* at syllabus.

The *Cafferkey* decision is supported by *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326. In *Hirschbach* we held

---

"No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe."

that "[o]ne who engages the services of an independent contractor, and who *actually participates* in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor." (Emphasis added.) *Id.* at syllabus. See, also, *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, and *Davis v. Charles Shutrump & Sons Co.* (1942), 140 Ohio St. 89, 23 O.O. 299, 42 N.E.2d 663.

We find the preceding authority applicable to the case under consideration today. Although *Hirschbach* was based on the duties of an *employer* found in R.C. 4101.11 and 4101.12, there is no question that it is appropriate to extend that analysis to the duties of an *employee* under R.C. 4101.13. If a general contractor owes no duty of care to a subcontractor pursuant to R.C. 4101.11 and 4101.12 because it does not actively participate in the subcontractor's work, it follows then that the general contractor owes no duty of care to the subcontractor under R.C. 4101.13, which prescribes the duties of employees. We are satisfied that when two or more independent contractors are engaged in work on the same premises, it is the duty of each contractor, in prosecuting its work, to use ordinary and reasonable care not to cause injuries to the employees of another contractor. An independent contractor who lacks a contractual relationship with a second independent contractor owes no affirmative duty beyond that of ordinary care to the employees of the second contractor, where the first contractor does not supervise or actively participate in the second contractor's work.

Both National and Precision reported directly to Finkbeiner. There was no privity between National and Precision. They were coequals. National did not control, supervise or actively participate in any aspect of the work performed by Precision's employees. Furthermore, Kucharski, along with his supervisor, surveyed the concrete deck and determined it was large enough to be safe. Kucharski admits that he was aware of the depth of the tank and the lack of guardrails on the deck. It was Kucharski's supervisor who decided Kucharski did not need to wear a safety belt. As noted above, Kucharski concurred in the view. By contrast, National employees who performed work on the concrete deck after the scaffolding and railing were removed were required by National to wear safety equipment, including belts.

Kucharski conceded that National owed no duty of care to him under R.C. 4101.11 and 4101.12. Therefore, in light of the preceding analysis, we find as a matter of law that National owed no duty of care to Kucharski and could not properly be found liable under R.C. 4101.13. National was not Kucharski's

employer and exercised no control over him. No contractual relationship existed between the parties and Kucharski admitted that he was aware of the fall hazard. R.C. 4101.13 refers to the duties of employees, not the employer, and should not have been applied to this case.

We hold, therefore, that the trial court erred as a matter of law when it denied National's motions for directed verdict and judgment notwithstanding the verdict. The appeals court was correct in reversing that decision.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., A.W. SWEENEY and RESNICK, JJ., concur.

DOUGLAS and PFEIFER, JJ., dissent with opinion.

MAHONEY, J., dissents.

JOSEPH E. MAHONEY, J., of the Eleventh Appellate District, sitting for F.E. SWEENEY, J.

PFEIFER, J., dissenting. The jury in this case, in responding to the jury interrogatories, found by a preponderance of the evidence that the defendant, National Engineering & Contracting Company, was negligent and that its negligence was a proximate cause of the plaintiff's injury. The majority too easily shrugs off those findings.

The majority, while finding that National could not be held liable for violating R.C. 4101.13, does recognize that National still owed Kucharski the duty of ordinary care. The jury may well have found that that duty was breached. The jury was instructed as to ordinary care as well as to R.C. 4101.13. Evidence was introduced that National had left planks stacked near the edge of the concrete deck from which Kucharski fell. Kucharski testified that he had tripped over those planks before falling over the edge. The jury may well have concluded that National was negligent for having left the planks in that location.

The jury interrogatories did not ask the jury to state *why* they found National negligent. Because there is a theory in addition to R.C. 4101.13 by which National could be found negligent, and since the jury did find negligence, this case should have been returned for retrial, at the very least.

DOUGLAS, J., concurs in the foregoing dissenting opinion.