OPINION
Plaintiff-appellant, Carl E. Carey,[1] appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, AK Steel Corporation and Armco Steel, Inc. We affirm.
On September 27, 1994, at approximately 3:00 a.m., appellant, while acting as an employee of Refiners Transport, Inc. ("Refiners"), drove his semi-tractor with attached tank trailer to appellees' plant in order to load coal tar into his tanker. Appellant had previously loaded coal tar from appellees' plant.
The coal tar at the AK steel plant is stored in a six hundred thousand gallon storage tank. From a storage tank, pipes carry the coal tar to a loading spout. The loading spout is L-shaped and attached to a rubber hose. From the rubber hose, the coal tar flows into the truck tanker. On the day of the accident, appellant parked his truck tanker so a dome lid at the top of the truck tanker was directly underneath the loading spout. Appellant climbed a ladder on the side of the truck tanker and stood on a narrow area on the top of the truck tanker. For protection, appellant wore rubber gloves provided by Refiners. Appellant used his foot to push the loading spout into the dome lid. After releasing a valve on the loading spout, the coal tar flowed into the tanker. After the truck tanker was full, appellant closed the valve and began to remove the loading spout from the dome lid. Appellant testified that
 [a]fter loading, I shut the valve * * * and like I said, the load spout has a lip on it. The lip was long enough to get about [an inch to an inch and one-half] of your fingers under it. * * * When I reached down to pull it up, my thermal rubber gloves, they slipped off. They just pulled off. And I started twirling my arms, trying to keep my balance, and I fell, and I landed on my feet. On my right heel the most.
Appellant suffered serious injuries as a result of the accident.
On January 24, 1997, appellant filed an amended complaint against appellees for negligence, nuisance and product liability. On August 11, 1997, appellees moved for summary judgment on all of appellant's claims. In a October 11, 1997 memorandum opposing the motion for summary judgment, appellant dismissed the product liability claims. On November 3, 1997, the trial court overruled the motion for summary judgment. On November 24, 1997, appellees filed a motion for reconsideration. On January 6, 1998, the trial court, reversing the earlier decision, granted summary judgment in favor of appellees. Appellant filed a timely notice of appeal and presents three assignments of error for our review:
Assignment of Error No. 1:
 The trial court erred in granting Summary Judgment as reasonable minds could conclude that there were genuine issues of material fact as to all elements of a negligence claim and the Appellees were not entitled to judgment as a matter of law.
Assignment of Error No. 2:
 The trial court erred in finding that "open and obvious doctrine" relieved the Appellees of their duty to provide a safe workplace pursuant to Ohio Revised Code Sec. 4101.11.
Assignment of Error No. 3:
 The trial court erred in holding that doctrine of assumption of risk bars recovery by the Appellant.
In the first assignment of error, appellant argues summary judgment was not warranted on the negligence claim because reasonable minds could conclude that a duty was owed to appellant by appellees.
Pursuant to Civ.R. 56(C), "[t]he appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. This court reviews a trial court decision to grant summary judgment de novo. Jones v. Shelley Co. (1995), 106 Ohio App.3d 440, 445.
A claim of negligence requires a duty, a breach of that duty, causation and damages. Jeffers v. Olexo (1989), 43 Ohio St.3d 140,142. In this case, appellant was a frequenter of appellee's plant. See Westwood v. Thrifty Boy Super Markets, Inc. (1972),29 Ohio St.2d 84, 86. An employer's duty to frequenters is found in R.C. 4101.11, which states that:
 Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.
"The duty owed to frequenters, i.e., including employees of other companies, is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." Eicher v. United States Steel Corp. (1987), 32 Ohio St.3d 248,249. See, also, Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103, paragraph one of syllabus.
However, the duty to frequenters does not apply "to hazards which are inherently and necessarily present because of the nature of the work performed, where the frequenter is the employee of an independent contractor." Eicher at syllabus. The Eicher court noted the "primary responsibility" for an employee of an independent contractor rests with the independent contractor. Id. at 250.
An exception applies when an employer "who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated." (Emphasis added.) Bond v. Howard Corp. (1995), 72 Ohio St.3d 332, 334-35, citing Hirschbach v. Cincinnati Gas Elec. Co. (1983), 6 Ohio St.3d 206, syllabus. If the employer actually participates in the job operation, the employer may be held responsible for the injury or death of an employee of an independent contractor." Id. In Cafferkey v. Turner Constr. Co. (1986), 21 Ohio St.3d 110, syllabus, the court refined the exception set forth in Hirschbach by holding that "[a] general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaging in inherently dangerous work." (Emphasis added.) Id. at syllabus.
In this case, Refiners was an independent contractor. Appellee, an employee of Refiners and a frequenter of appellees' plant, was engaged in inherently dangerous work by top-loading coal tar from a narrow area on the top of Refiners' truck tanker. See McKonville v. Jackson Comfort Sys., Inc. (1994), 95 Ohio App.3d 297,302. Generally, appellees do not have a duty of care to appellant. Eicher at syllabus. However, an exception applies if appellees actively participated in loading the coal tar.
Appellant insists that since appellees provided the apparatus used to load the coal tar, appellees "actively participated" in loading the coal tar. We disagree. The Ohio Supreme Court has held that "`[a]ctively participated' means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." Bond at syllabus. In this case, appellees did not direct or supervise the work. The decision to continue to use appellee's top-loading coal tar apparatus, despite the inherent dangers, rested with appellee and Refiners. Eicher, 52 Ohio St.3d at 250.
Recently, in Sopkovich v. Ohio Edison (1998), 81 Ohio St.3d 628, the Ohio Supreme Court held that active participation can occur even when the property owner "did not participate in the actual work activities of the independent contractor." Id. at 643. The Court held active participation can be shown if the property owner "did * * * retain and exercise exclusive control over a critical variable in the work environment." Id. (Emphasis added.) However, in the case sub judice, appellant or Refiners controlled almost every aspect of the work environment. Specifically, Refiners and appellant controlled the truck (including the ladder and area on top of the storage tank). Refiners was responsible for any and all safety equipment appellant used. Appellant had complete discretion in the particular steps he used to top load the coal tar. Appellees only provided the apparatus to load the coal tar. In short, appellant does not meet the Sopkovich standard for active participation.
Finally, appellant argues, in effect, that the inherent hazards rule should not apply because appellees are not a general contractor, but the owners of the plant where the accident occurred. However, this court has applied the inherent hazards rule to a premises owner. Adkins v. Armco Steel Company (Apr. 15, 1996), Butler App. Nos. CA95-07-119, CA95-08-132, CA95-08-142, unreported, at 6 ("Armco was not even the general contractor, but simply the owner of the premises, and its activities did not amount to active participation."). Accordingly, the first assignment of error is overruled.
In the second assignment of error, appellant avers that the trial court misapplied the "open and obvious" danger doctrine. This rule relieves an owner of the "duty to warn invitees * * * of open and obvious dangers on the property." Simmers v. Bentley Construction Company (1992), 64 Ohio St.3d 642, 644. The logic behind the rule is that the open and obvious danger acts as a warning. Id.
Appellant's testimony indicated he was acutely aware of the dangers of top-loading coal tar at appellee's plant and the lack of "safety features" at the plant. Appellant described the difficulty of walking the narrow area on the top of his truck and the lack of a safety harness. Nevertheless, appellant claims that the open and obvious danger rule does not apply because he had no alternative to top-loading coal tar, which was integral to his employment. Appellant analogizes to Brillhart v. Mansfield (Oct. 21, 1997), Richland App. No. 96CA105, unreported. In Brillhart, the court found summary judgment inappropriate under the open and obvious danger rule because the plaintiff could not exit a bathroom without walking through water that had spilled on the floor. Id. However, in this case, appellant was entitled to haul other substances for Refiners or to inform Refiners that he viewed top-loading coal tar as unsafe. Therefore, appellees had no duty to warn appellant of the dangers involved in top-loading coal tar as a matter of law. See, Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 203-04. The second assignment of error is overruled.
In the third assignment of error, appellant alleges the trial court erred by concluding that assumption of the risk barred appellant's claims. When Ohio adopted comparative negligence, implied assumption of the risk merged with contributory negligence. See R.C. 2315.19. Implied assumption of the risk means "attendant circumstances * * * raise questions of fact whether an injured party assumed the risk in a particular situation." Therefore, implied assumption of the risk may limit a plaintiff's recovery, but would not bar recovery. By contrast, primary assumption of the risk can still bar recovery on a negligence claim. Gallagher v. Cleveland Browns Football Co. (1996), 74 Ohio St.3d 427, 431. Primary assumption of the risk applies when "the activity undertaken involves such obvious and unavoidable risks that no duty of care is said to attach." (Emphasis added.) Id. at 432. Holmes v. Health and Tennis Corp. of Am. (1995), 103 Ohio App.3d 364, 366. The doctrines of an inherently hazardous activity and/or open and obvious danger utilize primary assumption of risk by removing a duty of care as a matter of law.
Appellant insists that assumption of the risk cannot apply because appellant was performing his normal job duties. In Cremeans v. Willmar Henderson Mfg. (1991), 57 Ohio St.3d 145, syllabus, a product liability case, the court held that "[a]n employee did not assume the risk of injury which occurs in the course of his or her employment when that risk must be encountered in the normal course of his or her required job duties." However, as we previously observed in another products liability case, there was no majority opinion from the Cremeans court. See McFarland v. Bruno Machinery Corporation (Sept. 14, 1992), Warren App. No. CA91-11-089, unreported, at 12-13.
In McFarland, an employee suffered a work-related injury. Id. at 2. At trial, the employer asserted the employee "assumed the risk of his injuries." Id. at 3. After a verdict for the employer, the employee appealed, arguing assumption of the risk was not available as a defense. Id. at 2. We summarized the Cremeans opinion in relevant part as follows:
 [O]nly Justices Douglas and Sweeney held that they would make assumption of the risk virtually unavailable as a defense to a manufacturer where the user is injured in the course of his job performance. Justices Brown and Resnick concurred in the judgment and syllabus, but in a separate opinion reasoned that when an employee elects to use a defective product, assumption of the risk should still be available as a defense. * * * Thus, Justices Brown and Resnick would focus on the voluntariness of the employee's behavior when determining whether or not assumption of the risk could be used a defense.
Id. This court concluded that since the facts in McFarland were in dispute, "the trial court did not err * * * in refusing to instruct the jury that * * * assumption of the risk is unavailable for claims arising from work-related injuries." Id. at 14.
Later, in Carrel v. Allied Products Corp. (1997), 78 Ohio St.3d 284, syllabus, the Ohio Supreme Court explained Cremeans by holding:
 In a products liability case, assumption of the risk may be a viable defense against an employee injured by a defective product in the workplace. An employee will be deemed to have voluntarily exposed himself or herself to a risk when he or she has elected to use a defective product. However, the defense of assumption of the risk is not available when the employee is required to encounter the risk while performing normal job duties.
In essence, Carrel affirmed this court's view of the limited scope of the Cremeans decision.
In an analogous situation to McFarland, appellant asks this court to interpret Cremeans expansively, applying Cremeans to a frequenter negligence case. We decline this offer for several reasons. First, "Cremeans involved strict products liability while the case sub judice involves premises liability while under the frequenter statute." Davenport v. M/I Schottenstein Homes, Inc. (1993), 96 Ohio App.3d 237, 241-42, appeal dismissed as improvidently allowed (1994), 71 Ohio St.3d 1204.[2] Second, appellant was not "required to encounter the risk" while performing normal job duties. See Carrel at syllabus. Appellant testified that he was paid more to haul coal tar than other substances. Given the opportunity, appellant hauled coal tar, rather than another substance, for financial benefit.
Finally, in a frequenter negligence case, the Ohio Supreme Court has held:
 Where a frequenter * * * voluntarily and with knowledge of an existing danger enters the premises of an employer * * * the defense of assumption of risk is available to such employer in an action by the frequenter alleging a violation of R.C. 4101.11, a safe-place statute.
Westwood, 29 Ohio St.2d 84 at syllabus. Appellant admitted that he was aware of the dangers of top-loading coal tar at appellees' plant. Accordingly, the third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and KOEHLER, J., concur.
[1] There are two appellants, because the amended complaint includes a consortium claim of Carl E. Carey on behalf of his minor child. For simplicity, we refer to "appellant." In view of our ultimate ruling, the consortium claim, as a derivative cause of action, cannot proceed alone. See Morgan v. Taft Place Medical Center (June 8, 1998), Butler App. No. CA97-12-226, unreported, at 11.
[2] We are aware that, in a concurrence to the dismissal of Davenport, Justice Douglas stated, "[a]dmittedly, Cremeans involved the use of a defective product. * * * The holding in Cremeans involved injuries suffered by an employee in the workplace and was not limited to injuries caused only by defective products." Justice Resnick joined the concurrence. Id. at 1205. However, this concurrence predates Carrel and, in any event, is not binding precedent.