DECISION.
{¶ 1} Plaintiff-appellant Lisa Bullucks grabbed a loose railing on the front steps of her parents' house, lost her balance, and fell, breaking her kneecap. Bullucks sued her parents, Ruth A. Moore and Joseph Moore. The trial court granted summary judgment in favor of the Moores, and Bullucks now appeals. We reverse.
{¶ 2} Bullucks was visiting her parents at their house when she and her mother decided to go to the store to get something to eat. Bullucks walked out the front door with her mother a few paces ahead of her. James Drake, the Moores' foster child, was sitting on the steps leading from the porch to the front walk. In order to get around Drake, Bullucks grabbed the porch railing at the top of the steps.
{¶ 3} As Bullucks pulled on the railing, the railing post came out of the concrete, which caused Bullucks to lose her balance. As she lost her balance, Bullucks stepped down on a crack in the sidewalk and twisted her right ankle. As her right ankle twisted, Bullucks fell forward onto her left knee, breaking the kneecap. The broken kneecap required two surgeries, during which two pins and additional wires were inserted into the kneecap and then later removed. In her suit, Bullucks claimed that her parents knew or should have reasonably known of the dangerous conditions the loose railing and the cracked sidewalk and were negligent in their failure either to warn her or to make the conditions safe.
{¶ 4} Invitee or Social Guest A Question of Fact
{¶ 5} In her sole assignment of error, Bullucks asserts that the trial court erred in granting summary judgment. We review a grant of summary judgment de novo.[1] The Moores were entitled to prevail on their summary-judgment motion only if (1) there was no genuine issue of material fact; (2) they were entitled to judgment as a matter of law; and (3) it appeared that reasonable minds could come to but one conclusion when viewing the evidence in favor of the party opposing the motion, and that conclusion was adverse to the party opposing the motion.[2]
{¶ 6} In Ohio, the duty owed by a possessor of land to another on the land depends upon the other's status as a trespasser, a licensee, or an invitee.[3] In addition, the law tends to treat social guests as a distinct category.[4] (This author, at least, believes that these distinctions serve no purpose, but they seem still to be followed by the Ohio Supreme Court.) The parties disagree on the appropriate status for Bullucks while she was on the Moores' property, and on the corresponding duty of care the Moores owed Bullucks. Specifically, Bullucks claims that she was an invitee, while the Moores argue that Bullucks was a social guest.
{¶ 7} An invitee is a business visitor, or one who rightfully comes upon the premises of another by invitation, express or implied, for some purpose that is beneficial to the owner.[5] The landowner owes the invitee a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition.[6] In addition, there is also a duty to warn invitees of latent or concealed perils on the property of which the landowner has knowledge or should have knowledge.[7]
{¶ 8} A social guest is one who is allowed use of the premises merely as a personal favor. The duty of care owed a social guest, though remarkably similar to that for an invitee, is considered to be less of a duty. "A host who invites a social guest to his premises owes the guest the duty (1) to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and (2) to warn the guest of any condition of the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition."[8]
{¶ 9} Ruth Moore testified at her deposition that Bullucks came over with her husband and children that day "to eat dinner and just hang out with us." This could indicate that Bullucks was a social guest. But Bullucks testified at her deposition that her purpose for visiting was to take her mother to the store, and they were indeed heading out to the store when Bullucks fell. As Bullucks was performing a service for her mother, she could have been classified as an invitee rather than a mere social guest, and thus have required the higher standard of care from the Moores.
{¶ 10} The trial court did not make a determination of Bullucks's status for purposes of premises liability in its entry granting the summary judgment. We conclude that the determination of Bullucks's status was, at the least, a question of fact. It would need to be decided before proceeding to an analysis of whether the Moores breached a duty to Bullucks.
{¶ 11} Perhaps the trial court determined that Bullucks's status was not a material fact to be decided, reasoning that the Moores did not breach a duty to her under either standard. If so, we disagree. As discussed in the next section, we conclude that there remain additional questions of fact concerning whether the Moores violated a duty of care to Bullucks, regardless of whether she was an invitee or a social guest. Therefore, Bullucks' status for premises liability was a material question of fact, meaning that the trial court was precluded from granting summary judgment.
{¶ 12} Breach of Duty A Question of Fact
{¶ 13} The porch railing that Bullucks grabbed as she started down the steps came loose, causing her to lose her balance. Bullucks testified at her deposition that she had no previous knowledge that the railing was loose or that it was a potential danger.
{¶ 14} Joseph Moore, Bullucks's father, testified at his deposition that he knew the railing could come loose. Moore testified that, on a previous occasion, the railing had come loose from the concrete base, and that when it happened, the railing would "swing like a hinge." Moore testified, "The bottom of the post came out, which allowed the railing to open like a fence gate." Moore further testified, "I knew that railing was bad." Moore was inside the house when Bullucks fell, but as soon as he heard that she fell, "I knew exactly what it was as soon as I heard what happened, because I remembered that. I knew that thing was like that." Moore also testified that he never told Bullucks or anyone else about how the railing could come loose, nor had he made any attempt to repair it.
{¶ 15} Regardless of the eventual determination of Bullucks's status as either an invitee or a social guest, the Moores may have violated a duty of care to her. An invitee must be warned of concealed perils that the landowner has knowledge of, while a social guest must be warned of any conditions that the host should reasonably consider dangerous. Joseph Moore knew that he had a porch railing that could come loose when grabbed. The loose railing was a concealed peril or a dangerous condition. At the least, it was a genuine issue of material fact whether the Moores' failure to warn Bullucks of the loose railing resulted in a breach of a duty to her.
{¶ 16} Open and Obvious
{¶ 17} As for the crack in the sidewalk, the Moores argue that it was an "open and obvious" defect, and that they were therefore relieved of any duty to warn social guests or invitees of its danger.
{¶ 18} The open-and-obvious doctrine provides that the owner or occupier of premises owes no duty to warn of defects in the premises that invitees or guests should reasonably be expected to discover and to take appropriate precautions to protect themselves.[9] In Texler v. D.O.Summers Cleaners Shirt Laundry Co.,[10] the Ohio Supreme Court did not mention the open-and-obvious doctrine where the plaintiff tripped over a bucket on a sidewalk.
Although the court did not explicitly reject the open-and-obvious doctrine in Texler, there is now a split of authority on this issue. For example, the Eighth Appellate District has held that Texler has abrogated the open-and-obvious doctrine.[11] It has stated that the openness and obviousness of a hazard should be analyzed not in terms of the duty owed, but rather in terms of causation.[12] This author also believes that the doctrine has lost its validity.[13]
{¶ 19} The Ninth Appellate District, however, rejects the interpretation that Texler has abrogated the open-and-obvious doctrine.[14] It has stated that the open-and-obvious doctrine should continue to be applied to the duty element of negligence, and that the doctrine is not inconsistent with the principles of comparative negligence.[15]
{¶ 20} We note that the Ohio Supreme Court has acknowledged that a conflict exists among the districts and has accepted the matter for review.[16] Therefore, this issue will be clarified for the courts, counsel, and parties, most likely before this case comes to trial. In the interim, the open-and-obvious doctrine continues to apply in this district.[17]
{¶ 21} In any event, the Moores were entitled to summary judgment only if there were no genuine issues of material fact. Because genuine issues of material fact existed in this case the determination of Bullucks's status on the Moores' property, whether the Moores breached a duty of care owed to Bullucks, and whether Bullucks's own negligence contributed to her injury the grant of summary judgment by the trial court was erroneous.
{¶ 22} Accordingly, we sustain Bullucks's assignment of error, reverse the trial court's judgment, and remand the case for further proceedings consistent with this decision.
Judgment reversed and cause remanded.
Gorman and Sundermann, JJ., concur.
[1] See Doe v. Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-186,738 N.E.2d 1243.
[2] See Grafton v. Ohio Edison Company, 77 Ohio St.3d 102, 105,1996-Ohio-336, 671 N.E.2d 241.
[3] See Patete v. Benko (1986), 29 Ohio App.3d 325, 327, 505 N.E.2d 647;Gladon v. Greater Cleveland Regional Transit Auth., 75 Ohio St.3d 312,315, 1996-Ohio-137, 662 N.E.2d 287.
[4] See Scheibel v. Lipton (1951), 156 Ohio St. 308, 328,102 N.E.2d 453.
[5] See Gladon v. Greater Cleveland Regional Transit Auth.,75 Ohio St.3d 312, 315, 1996-Ohio-137, 662 N.E.2d 287.
[6] See Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68,502 N.E.2d 611.
[7] See Westwood v. Thrifty Boy Super Markets, Inc. (1972),29 Ohio St.2d 84, 86, 278 N.E.2d 673.
[8] Scheibel v. Lipton (1951), 156 Ohio St. 308, 102 N.E.2d 453, paragraph three of the syllabus.
[9] See Simmers v. Bentley Constr. Co., 64 Ohio St.3d 642, 644,1992-Ohio-42, 597 N.E.2d 504.
[10] 81 Ohio St.3d 677, 1998-Ohio-602, 693 N.E.2d 271.
[11] See Schindler v. Gales Superior Supermarket (2001),142 Ohio App.3d 146, 153, 754 N.E.2d 298.
[12] Id.
[13] See Wilson v. PNC Bank (May 5, 2000), 1st Dist. No. C-990727 (Painter, J., concurring in judgment).
[14] See Armstrong v. Best Buy Co., 9th Dist. No. 01CA007848, 2001-Ohio-1934.
[15] Id.; see, also, Mayweather v. Rite Aid Corp., 5th Dist. No. 2002CA00160, 2002-Ohio-6406.
[16] See Armstrong v. Best Buy Co. (2002), 95 Ohio St.3d 1411,765 N.E.2d 878.
[17] Wilson v. PNC Bank (May 5, 2000), 1st Dist. No. C-990727.