[Cite as *Chlopecki v. Gilbane*, 2012-Ohio-6142.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98476**

---

## LORENE CHLOPECKI, ET AL.

PLAINTIFFS-APPELLANTS

vs.

## GILBANE, ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
**REVERSED AND REMANDED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-735476

**BEFORE:** Stewart, P.J., E. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** December 27, 2012

**ATTORNEYS FOR APPELLANTS**

Paul W. Flowers
Paul W. Flowers Co., LPA
Terminal Tower, 35th Floor
50 Public Square
Cleveland, OH    44113

W. Craig Bashein
Anthony N. Palombo
Thomas J. Sheehan
Bashein & Bashein Co., LPA
Terminal Tower, 35th Floor
50 Public Square
Cleveland, OH    44113


**ATTORNEYS FOR APPELLEES**

James P. Hanratty
Beau D. Hollowell
Marshall, Dennehey, Warner, Coleman & Goggin
127 Public Square, Suite 3510
Cleveland, OH    44114

MELODY J. STEWART, P.J.:

{¶1} Plaintiffs-appellants Lorene and John Chlopecki brought this negligence action against Gilbane and several of its related companies (we shall refer to them collectively as "Gilbane") seeking damages for injuries Lorene suffered on a construction site when a mobile scaffolding that she was working atop rolled away and into an opening on the floor, causing it to topple.[1] The Chlopeckis alleged that Gilbane, the general contractor on the construction site, failed to ensure Lorene's safety because it negligently covered openings in floors and otherwise failed to adopt and implement proper safety measures at the job site. Gilbane sought summary judgment on grounds that it did not owe Lorene Chlopecki a duty of care because she worked for a subcontractor who controlled the conditions of her employment and that it did not otherwise actively participate in the performance of her job. The court granted Gilbane's motion for summary judgment without opinion.

I

{¶2} Civ.R. 56(C) permits the court to grant summary judgment when, after viewing the facts most favorably to the nonmoving party, reasonable minds could find

---

[1] John's claim is for loss of consortium.

that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.

{¶3} The elements of an ordinary negligence suit between private parties are (1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant's breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶4} "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to exercise due care toward the plaintiff." *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188 (1989).

{¶5} As a general principle, a general contractor owes no duty of care to an independent contractor on a construction site, merely by virtue of its supervisory capacity, unless the general contractor actively participates in the work performed by the independent contractor. *Cafferkey v. Turner Constr. Co.*, 21 Ohio St.3d 110, 488 N.E.2d 189 (1986), syllabus; *Kucharski v. Natl. Eng. Contracting Co.*, 69 Ohio St.3d 430, 1994-Ohio-320, 633 N.E.2d 515, syllabus. For purposes of establishing a general contractor's liability to the injured employee of an independent subcontractor, the phrase "'actively participated' means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the

project." *Bond v. Howard Corp.*, 72 Ohio St.3d 332, 336-337, 1995-Ohio-81, 650 N.E.2d 416.

II

{¶6} Viewing the evidence most favorably to the Chlopeckis, the nonmoving parties, the record shows that Gilbane was the general contractor on a construction site; Lorene's employer, Doan Pyramid LLC, was the electrical subcontractor. Chlopecki, an electrician, was tasked by Doan to install smoke detectors in the ceiling. This task necessitated the use of a scaffold with wheels so that it could be rolled from place-to-place. Doan was required by Gilbane to furnish the scaffold.

{¶7} Lorene said that the scaffold was 20 feet high, and that it would be inconvenient for her to climb down from the scaffold every time she completed the installation of a smoke detector. Doan usually assigned a worker to stand on the floor alongside the scaffold and wheel Lorene from place to place as she installed the smoke detectors. Lorene remained standing on the scaffold as it was wheeled into location.

{¶8} At the time Lorene was installing the smoke detectors, the floor on which the scaffold stood had open sections or holes as a result of ongoing installation of certain heating and electrical systems. The construction project called for a concrete base and a floor, elevated by some 36 inches, placed above the concrete to create a plenum for heating, ventilation, cooling, electrical cables, and computer wiring. Sections of the floor were left open to permit access to these systems during construction. Gilbane covered each opening with a 4x8 foot piece of plywood and painted the word "hole" on

the plywood with orange, fluorescent paint. The plywood boards were not fastened to the floor to avoid leaving small holes in the floor. A Doan foreman said that all of the construction workers were advised of these openings during safety meetings. Lorene admitted that she was aware of the openings as she was installing smoke detectors throughout the building.

{¶9} On the day of her accident, Lorene was working without an assistant to move her. A Doan foreman saw her and told her that when she needed to be moved, she should call out for another worker to push the scaffold to the next installation point. At the time her accident occurred, she had completed installing a smoke detector and was looking for someone to push the scaffold. She could not find anyone, so she walked along the scaffold looking for anyone who might be able to push her. As she did so, the scaffold began to roll toward a plywood board covering a hole. At some point, the plywood board shifted, exposing a small crack or opening of the now-partially covered hole on the floor. A wheel of the scaffold went into the opening, causing the scaffold to tip over. The parties appear to agree that the scaffold wheels were not locked by the person who last pushed Lorene's scaffold into position. Lorene did not know who last pushed the scaffold and presumably failed to lock the wheels.

{¶10} We agree with Gilbane that none of the evidence showed that Gilbane exercised any degree of control over Lorene's performance of her duties. Gilbane did not direct Lorene to use a scaffold to install the smoke detectors, nor did it direct a Doan employee to push her scaffold into position. At all events, Gilbane's relationship to

Lorene and her employer was nothing more than to exercise a general supervisory role over the project — it did not rise to the level of directing her employment in any way. *Bond, supra,* at syllabus. At most, Gilbane's involvement with the subcontractor Doan consisted of daily safety briefings for all contractors. These briefings were aspirational in nature and did not require Lorene to do something at Gilbane's direction in a manner that exposed her to potential harm. Stressing that subcontractors exercise safety in performing their work did not rise to the level of supervision required to impose a duty on Gilbane for the safety of Doan's employee, Lorene.

{¶11} Gilbane did, however, exercise control over a "critical variable" of the workplace — the placement of the plywood boards covering the open holes on the floor. Gilbane understood that the placement of the boards posed a safety hazard. It specifically wrote a warning on the plywood and conducted safety meetings at which it warned employees that it had placed plywood over the holes in the floor. Having undertaken to place the plywood, Gilbane was responsible for any negligence in how the plywood was placed. It admittedly chose not to fasten the plywood to the floor with screws lest the floor itself be damaged. Reasonable minds could differ on whether Gilbane exercised reasonable care in choosing not to fasten the plywood to the floor and whether it exercised reasonable care to ensure that the plywood was sufficiently anchored to the ground to prevent it from moving.

{¶12} In reaching this conclusion, we note this case is distinguishable from *Bond*. In *Bond*, an employee of a subcontractor was constructing a wall using material that was

placed near an unguarded hole in the floor. The employee fell through and sued the general contractor for negligence. The court held that the general contractor did not actively participate in the subcontractor's work because it neither gave nor denied permission for placing the materials near an unguarded hole that led to the injuries. In this case, it was Gilbane that covered the hole with an unsecured piece of plywood, thus leading to the possibility that the plywood might move and expose a portion of the hole.

{¶13} It is true that Lorene was aware that the holes were covered by plywood and might have been negligent in failing to ensure her own safety. It is equally true that Gilbane was not responsible for failing to lock the wheels of the scaffold. But these are issues going to comparative negligence and should be determined by a trier of fact.

III

{¶14} Lorene also argues that Gilbane is liable under Ohio's Frequenter Statute, R.C. 4101.11, which states that:

> Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

{¶15} R.C. 4101.11 "is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring that the premises be kept in a reasonably safe condition, and that warning be given of dangers of which he has knowledge." *Eicher v. U.S. Steel Corp.*, 32 Ohio St.3d 248, 249, 512 N.E.2d 1165

(1987), citing *Westwood v. Thrifty Boy Super Markets*, 29 Ohio St.2d 84, 278 N.E.2d 673 (1972). When the frequenter is the employee of an independent contractor, the duty to frequenters pursuant to this statute does not extend to hazards that are inherent and necessarily present in the nature of the work performed. *Id.* Work is "inherently dangerous" when it creates a peculiar risk of harm to others unless special precautions are taken. In other words:

> To fall within the inherently-dangerous-work-exception, it is not necessary that the work be such that it cannot be done without a risk of harm to others, or even that it be such that it involves a high risk of such harm. It is sufficient that the work involves a risk, recognizable in advance, of physical harm to others, which is inherent in the work itself. *Pusey, Exr. v. Bator*, 94 Ohio St.3d 275, 279-280, 2002-Ohio-795, 762 N.E.2d 968, citing 2 Restatement of the Law 2d, Torts, Section 427, at 416, Section 427, Comment b (1965).

**{¶16}** There is no question that Lorene's work atop the scaffold was an inherently dangerous task — she testified that the scaffold was 20 feet tall and that she wore a safety tether while on the scaffold. Her use of a safety tether was a precaution against the manifest danger involved from a 20-foot fall from a scaffold. The potential for an accident atop the scaffold was thus "a hazard inherently and necessarily present because of the nature of the work." *McConville v. Jackson Comfort Sys., Inc.*, 95 Ohio App.3d 297, 642 N.E.2d 416 (9th Dist.1994). As a matter of law, Lorene could not recover under the Frequenter Statute.

IV

**{¶17}** In conclusion, the facts viewed most favorably to Lorene show that Gilbane's act of covering the hole in the floor with an unsecured piece of plywood was a

danger separate and apart from working atop the scaffold. Lorene's accident did not occur simply because she was on the scaffold — it occurred allegedly because the scaffold's wheel fell into an opening caused by movement of the plywood. As argued by Lorene, reasonable minds could find that but for the opening, the scaffold would not have toppled. It follows that the hazard present was not one solely caused by the inherently dangerous act of working atop a scaffold, but because Gilbane was allegedly negligent in failing to secure the plywood covering the hole.

{¶18} This cause is reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover of appellees their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MELODY J. STEWART, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR
KEY WORDS:
98476