BARNETT et al., Appellants,

v.

BEAZER HOMES INVESTMENTS, L.L.C., et al., Appellees.

[Cite as *Barnett v. Beazer Homes Invests., L.L.C.*, 180 Ohio App.3d 272, 2008-Ohio-6756.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2007–11–276.

Decided Dec. 22, 2008.

274

Cohen, Todd, Kite & Stanford, L.L.C., Michael R. Schmidt, Kenneth D. Jameson, and Joseph M. Hutson, for appellants, Ronnie and Sherry Barnett.

Paul T. Saba and Rebecca N. Algenio, for appellees Beazer Homes Investments and Beazer Homes USA, Inc.

Faulkner & Tepe L.L.P., and John C. Scott, for appellees Oehler Custom Gutters, Inc. and Rich Oehler.

Amy Spiller, for appellees Duke Energy Operating Company and Duke Energy Ohio, Inc.

WALSH, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Ronnie and Sherry Barnett,[1] appeal the decision of the Butler County Common Pleas Court granting summary judgment in a negligence action in favor of defendants-appellees, Beazer Homes Investments, L.L.C., Beazer Homes USA, Inc. (collectively "Beazer"), Duke Energy Ohio, Inc., and Duke Energy Corporation (collectively "Duke").[2] We reverse and remand.

{¶ 2} On February 5, 2005, Barnett, an employee of Oehler Custom Gutters, Inc. ("Oehler"), sustained serious injuries when he came into contact with a high-voltage electrical line while installing gutters on a house under construction by Beazer in the Elk Creek Estates subdivision in Trenton, Ohio. Beazer, as general contractor and owner of the property, subcontracted the gutter-installation work to Oehler.

{¶ 3} The electrical line at issue was composed of both a 7,200–volt phase line and a neutral line. The phase line was suspended approximately 20 feet in the air along the eastern property line, four feet above the neutral line. The electrical line was owned and operated by Duke pursuant to a utility easement on the property. The line serviced a nearby trucking company and a personal residence, but did not service any homes within the subdivision. Beazer did not

---

1. Sherry Barnett's claim as spouse of Ronnie Barnett is for loss of consortium. We will use "Barnett" in this opinion to refer to Ronnie Barnett.

2. Pursuant to Loc.R. 6(A), we have sua sponte removed this appeal from the accelerated calendar.

discover Duke's easement when platting the subdivision and became aware of the electrical line only after beginning construction of the house. As a result, a distance of approximately ten feet separated the eastern side of the house from the electrical line.

{¶ 4} Barnett's accident occurred while he was carrying a 31–foot section of gutter up a ladder positioned near the southeast corner of the house. Barnett balanced the gutter across his arms while climbing the ladder to the two-story roof line. When he reached the top of the ladder, he attempted to lay the gutter onto the roof. In doing so, a portion of the gutter came into contact with the 7,200–volt phase line. According to Barnett, he did not see the line prior to the accident. Richard Oehler, an employee who was assisting Barnett with the gutter installation, also testified that he did not see the electrical line.

{¶ 5} On January 14, 2005, approximately three weeks prior to Barnett's accident, employees of another Beazer subcontractor were installing siding on the eastern side of the house when a ladder they were using fell into the electrical line, causing a partial outage to the trucking company. Duke responded to the outage and issued a written safety warning to Beazer. Due to the close proximity of the electrical line to the area in which the individuals were working, Duke warned Beazer that no further work could be completed on the eastern side of the house without first contacting Duke to have the line de-energized. Both Oehler and Barnett were unaware of Duke's warning or the siding subcontractor's incident with the electrical line until after Barnett's accident.

{¶ 6} Barnett filed suit against Beazer, alleging that as owner of the property and general contractor for the construction of the subdivision, Beazer had a duty to maintain the premises in a reasonably safe condition and to warn Barnett of the electrical line, a hazardous condition on the property. Barnett also asserted a negligence claim against Duke as owner and operator of the electrical line, alleging that Duke had a duty to abate the condition, or at a minimum, to warn Barnett of the hazard posed by the line. Duke asserted a cross-claim against Beazer Homes Investments, L.L.C., alleging contribution and indemnification, and a third-party complaint against Oehler. Beazer Homes Investments, L.L.C. also filed a third-party complaint for contribution, indemnification, and negligence against Oehler and Richard Oehler.

{¶ 7} Beazer and Duke filed motions for summary judgment, which were granted by the trial court.[3] With respect to Beazer, the trial court concluded

---

3. Both Beazer Homes USA, Inc. and Beazer Homes Investments, L.L.C. filed separate motions for summary judgment. In its motion, Beazer Homes USA, Inc. argued that it was not a proper party in interest because it was a holding company for its subsidiary, Beazer Homes Investments, L.L.C. In its decision granting summary judgment to both Beazer Homes

that no duty of care was owed to Barnett because he was engaged in inherently dangerous work and the hazard posed by the electrical line was open and obvious. With respect to Duke, the court determined that although there was an issue of fact as to whether Duke could have reasonably anticipated Barnett's accident, the electrical line was an open and obvious hazard on the property and therefore, Duke owed no duty of care to Barnett. Although Oehler and Richard Oehler also filed a motion for summary judgment, the trial court did not reach the merits of the motion, concluding that it was rendered moot by the court's determination that no duty of care was owed to Barnett. Both Oehler and Richard Oehler were dismissed from the action and are not parties to this appeal.

{¶ 8} Barnett now appeals the trial court's decision granting summary judgment in favor of Beazer and Duke, raising four assignments of error for our review.

{¶ 9} Assignment of error No. 1 is as follows:

{¶ 10} "The trial court erred in deciding as a matter of law that Beazer as the general contractor did not owe a duty of care to Barnett because Beazer did not actively participate in Barnett's work or retain control over a critical variable in the workplace."

{¶ 11} In his first assignment of error, Barnett challenges the trial court's determination that Beazer did not owe a duty of care to Barnett because Beazer did not "actively participate" in Barnett's gutter-installation work. He also contends that his injuries were foreseeable by Beazer and therefore, the disposition of the case on the basis of summary judgment was inappropriate. We are persuaded by Barnett's arguments.

{¶ 12} Summary judgment is a procedural device used to terminate litigation and avoid a formal trial when there are no issues in a case to try. *Burkes v. Stidham* (1995), 107 Ohio App.3d 363, 370, 668 N.E.2d 982, citing *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615. This court reviews summary judgment decisions de novo, which means that we review the trial court's judgment independently and without deference to its determinations. *Burgess v. Tackas* (1998), 125 Ohio App.3d 294, 296, 708 N.E.2d 285. We utilize the same standard in our review that the trial court should have employed. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198.

USA, Inc. and Beazer Homes Investments, L.L.C., the trial court noted that a genuine issue of material fact existed as to whether Beazer Homes USA, Inc. was a proper party defendant. For purposes of this opinion, we will address the arguments on appeal as though they pertain to both Beazer Homes USA, Inc. and Beazer Homes Investments, L.L.C. On remand, the trial court may consider evidence on Beazer Homes USA, Inc.'s involvement in the case and whether or not it is a proper party.

{¶ 13} The Ohio Supreme Court has repeatedly held that summary judgment is appropriate under Civ.R. 56 when "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. Summary judgment should be awarded with caution and is not appropriate where the facts are subject to reasonable dispute. *Burkes,* 107 Ohio App.3d at 370, 668 N.E.2d 982.

{¶ 14} In order to avoid summary judgment in a negligence action, the plaintiff must show the following: (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the duty of care, and (3) as a direct and proximate result of the defendant's breach, the plaintiff was injured. *Angel v. Kroger Co.* (Apr. 8, 2002), Warren App. No. CA2001–07–073, 2002 WL 518101, citing *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. The threshold question of the existence of a duty is "a question of law, * * * and depends on the foreseeability of the injury." *Midwestern Indemn. Co. v. Wiser* (2001), 144 Ohio App.3d 354, 358, 760 N.E.2d 62. An injury is foreseeable if the defendant "knew or should have known that his act was likely to result in harm to someone." Id.

{¶ 15} The arguments presented under Barnett's first assignment of error require us to examine whether a duty of care was owed by Beazer to Barnett. Under Ohio law, when an employee of a subcontractor is injured while performing work for his or her employer that is "inherently dangerous," the owner of the property and/or general contractor generally owes no duty of care to that employee. See *Reno v. Concrete Coring, Inc.,* Montgomery App. No. 20650, 2005–Ohio–3062, 2005 WL 1415041, ¶ 16. See also *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, paragraph two of the syllabus. Although this determination is generally made on a case-by-case basis, working on a construction site has been classified as an inherently dangerous activity. See *McCumbers v. Yusa Corp.,* Fayette App. No. CA2006–05–018, 2006–Ohio–5847, 2006 WL 3186512, ¶ 8, citing *Frost v. Dayton Power & Light Co.* (2000), 138 Ohio App.3d 182, 194, 740 N.E.2d 734.

{¶ 16} Barnett does not dispute that he was engaged in an inherently dangerous activity while installing gutters on the house. However, Barnett claims that an exception to the no-duty rule exists because Beazer "actively participated" in his work.

{¶ 17} The Ohio Supreme Court has determined that a property owner can be held liable for the injury or death of an employee of an independent

subcontractor if it "actually participates[4] in the job operation performed by such contractor and thereby fails to eliminate a hazard which [the property owner], in the exercise of ordinary care, could have eliminated * * *." *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, at syllabus. Active participation means more than supervising or coordinating; the property owner must direct the activity that resulted in the injury and/or give or deny permission for the critical acts that led to the employee's injury. *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 337, 650 N.E.2d 416; *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 113, 21 OBR 416, 488 N.E.2d 189.

■ {¶ 18} In defining this doctrine more specifically, the Ohio Supreme Court has concluded that "active participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace." *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 643, 693 N.E.2d 233. Under this definition, a distinction exists between a property owner's control over the *work area* and the *work activities* of an independent contractor's employee. Id. at 639, 693 N.E.2d 233. (Emphasis added.) A property owner's liability under the active participation doctrine can attach under both or either circumstance. Id. at 643, 693 N.E.2d 233.

■ {¶ 19} Construing the evidence in favor of Barnett, we cannot conclude that Beazer directed or exercised control over Barnett's actual work activities. The evidence reveals that Beazer did not direct the manner or method in which Barnett was to complete the gutter-installation job. The parties do not dispute that the only information Beazer provided about the job was the house number, the color of the gutters to be installed, and the amount Oehler was to be paid. There is no evidence to indicate that Beazer instructed Barnett to place his ladder on the eastern side of the house closest to the electrical line. Although Beazer, as the general contractor, retained a general supervisory role over the gutter-installation project as a whole, this does not rise to the level of active participation in Barnett's actual work activities. See *Cafferkey*, 21 Ohio St.3d at 112, 21 OBR 416, 488 N.E.2d 189.

■ {¶ 20} However, our determination that Beazer did not actively participate in Barnett's work activities does not end our inquiry. Barnett also argues that Beazer actively participated in his work because it retained control over a

---

4. The phrases "actually participates" and "actively participates" are synonymous. See *Bell v. DPL, Inc.* (Aug. 31, 1999), Adams App. No. 98CA663, 1999 WL 713589, at fn. 2.

critical workplace variable, i.e., the coordination of the de-energization of the electrical line.

{¶ 21} The evidence presented reveals that one of Duke's safety specialists met with Alvin Carpenter, Beazer's subdivision supervisor, the day after the siding company's incident with the electrical line. The safety specialist told Carpenter that any individuals working on the eastern side of the house were in violation of Occupational Safety and Health Administration ("OSHA") regulations and that in order for work to continue on that side of the house, the electrical line would need to be de-energized. Together, they determined that the line would be de-energized the following Sunday so as to cause only a minimal disruption to the trucking company serviced by the line. The safety specialist testified that he had approximately four or five conversations with Carpenter about the need to contact Duke and have the electrical line de-energized if workers were scheduled to be present on the eastern side of the house.

{¶ 22} In addition, Sean Kreider, Beazer's construction area manager, testified that after the incident with the siding company but before Barnett's accident, he remembered telling Carpenter to make sure that "if anyone was working on [the eastern] side of the house, that we told them that, you know, hey, watch out for the electrical line." Kreider further testified that after speaking with Duke representatives, he knew that individuals were not to resume work on the eastern side of the house unless the line was de-energized.

{¶ 23} Richard Oehler testified that he spoke with Carpenter the same week of Barnett's accident to inform him that the gutters would be installed on February 5, 2005. According to Richard Oehler, Carpenter made no mention of the siding subcontractor's incident or the need to have the electrical line de-energized at the time the job was scheduled.

{¶ 24} Richard Oehler also testified that he saw Carpenter two days after Barnett's accident. When he informed him of Barnett's injuries, Carpenter responded, "Oh, you guys weren't even supposed to be out there. I was supposed to call you." Carpenter testified that if he had seen Richard Oehler prior to the day of the accident, he would have told him about the electrical line to let him know that the line was "hot."

{¶ 25} In light of this evidence, we conclude that reasonable minds could disagree as to whether Beazer exercised or retained control over the de-energization of the line, a critical variable in Barnett's work environment. Although Beazer argues that Barnett or Richard Oehler could have contacted Duke to have the line de-energized, the evidence indicates that only Beazer knew of the hazard posed by the line and the need to coordinate its de-energization with Duke in advance of scheduling subcontractor work. A jury could reasonably conclude that Beazer, as general contractor and property owner, assumed this

responsibility. Based upon these facts, it cannot be said, as a matter of law, that Beazer owed no duty of care to Barnett.

{¶ 26} In addition, Beazer's advance knowledge of the hazard creates an issue of fact as to its liability to Barnett. See *Cole v. Contract Framing*, 162 Ohio App.3d 612, 2005-Ohio-4244, 834 N.E.2d 409 ¶ 38 (noting that if the owner of the property had notice of the hazard prior to the employee's accident, such knowledge may create a genuine issue of material fact as to the property owner's liability to the employee). " ' "[T]he existence of hazards which could be eliminated by the exercise of ordinary care by those in custody and control of the premises cannot be considered inherent hazards necessarily present because of the character of the work to be done." ' " Id., quoting *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, fn. 2, quoting *Parsons v. Blount Bros. Contr. Co.* (C.A.6, 1960), 281 F.2d 414, 417. In this case, reasonable minds could conclude that the hazard posed by the electrical line could have been eliminated if Beazer had informed Richard Oehler of the hazard when the gutter-installation job was scheduled.

{¶ 27} Based upon the foregoing, we conclude that the trial court erred in determining, as a matter of law, that Beazer owed no duty of care to Barnett because Beazer did not "actively participate" in Barnett's work. Barnett's first assignment of error is sustained.

{¶ 28} Assignment of error No. 2 is as follows:

{¶ 29} "The trial court erred in deciding as a matter of law that Beazer and Duke did not owe a duty of care to Barnett because the power lines were open and obvious."

{¶ 30} In his second assignment of error, Barnett asserts that the trial court erred in concluding, as a matter of law, that the electrical line was an open and obvious hazard and therefore, Beazer and Duke owed no duty of care to Barnett. We are persuaded by Barnett's argument.

{¶ 31} Generally, a premises owner owes invitees a duty to exercise ordinary care to maintain the premises in a reasonably safe condition, so that invitees will not be unreasonably or unnecessarily exposed to danger. *Paschal v. Rite Aid Pharmacy, Inc.* (1985), 18 Ohio St.3d 203, 18 OBR 267, 480 N.E.2d 474. However, a premises owner owes no duty to warn invitees of open and obvious dangers on the property. *Sidle v. Humphrey* (1968), 13 Ohio St.2d 45, 42 O.O.2d 96, 233 N.E.2d 589, paragraph one of the syllabus. The rationale for this doctrine is that "the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves." *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d

642, 644, 597 N.E.2d 504.  The application of the open-and-obvious doctrine concerns the duty element of a negligence claim.  See *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088, ¶ 4.

{¶ 32} Open-and-obvious hazards are those that are not concealed and are discoverable by ordinary inspection.  *Parsons v. Lawson Co.* (1989), 57 Ohio App.3d 49, 50–51, 566 N.E.2d 698.  A dangerous condition does not actually have to be observed by the claimant to be open and obvious.  *Colvin v. Kroger Co.*, Madison App. No. CA2005–07–026, 2006–Ohio–1151, 2006 WL 589381, ¶ 11.  Rather, the determinative issue is whether the condition is observable.  Id.  This determination "depends upon the particular circumstances surrounding the hazard."  *Olivier v. Leaf & Vine*, Miami App. No.2004 CA 35, 2005–Ohio–1910, 2005 WL 937928, ¶ 31.  The application of the open-and-obvious doctrine concerns the duty element of a negligence claim.  See *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088, ¶ 4.

{¶ 33} Construing the evidence in favor of Barnett, we conclude that reasonable minds could disagree as to whether the hazard posed by the electrical line was open and obvious.  Although Barnett testified in his deposition that nothing obstructed his view of the line, it is significant that Barnett also testified that if he had looked up, he "would have seen *wires*."  (Emphasis added.)  He testified: "[h]ad I looked up, I would have seen wires.  I don't necessarily think I would have known whether [the wires] [were] live electricity or whether they [were] phone lines or what."  He further testified that if he had seen the lines, he would have likely thought they were phone lines because they were "skinny."

{¶ 34} Notwithstanding Beazer's argument that if Barnett had exercised "even a slight degree of care" for his safety and had looked up, he would have seen the electrical line, the Ohio Supreme Court's decision in *Armstrong* requires us to direct our focus on whether the hazardous condition presented by the line, i.e., high-voltage electricity, was so obvious that no liability may be imposed upon Beazer.  See *Armstrong*, 99 Ohio St.3d 79, 2003–Ohio–2573, 788 N.E.2d 1088, at ¶ 13.  The inquiry centers on the nature of the danger and not Barnett's conduct in encountering it.  Id.  In this case, Barnett's testimony creates a jury issue as to whether the hazardous condition was so apparent that it would serve as a warning to him.  Accordingly, we cannot conclude that the particular hazard posed by the electrical line was open and obvious such that Beazer and Duke owed no duty of care to Barnett as a matter of law.[5]

---

5.  In making this determination, we take no position on whether the trial court properly applied the open-and-obvious doctrine to Duke given its elevated standard of care as a public utility company.  See *Deem v. Columbus S. Power Co.*, Meigs App. No. 07CA6, 2007–Ohio–4404, 2007 WL 2421409, at fn. 3.

{¶ 35} Barnett's second assignment of error is sustained.

{¶ 36} Assignment of error No. 3 is as follows:

{¶ 37} "The trial court erred in ruling that even though Duke could have reasonably anticipated Barnett's accident or injury, Duke did not negligently fail to take appropriate safety measures."

{¶ 38} In his third assignment of error, Barnett contends that the trial court erred in determining that although Duke could have reasonably anticipated Barnett's accident, Duke was not negligent in failing to take appropriate safety measures.

{¶ 39} Under Ohio law, a public utility company has a duty to exercise the highest degree of care to avoid injuries to those who have a right to be in proximity to electrical wires. See *Phillips v. Dayton Power & Light Co.* (1994), 93 Ohio App.3d 111, 116, 637 N.E.2d 963. This duty extends to the general public and has been held to apply to injuries that the utility company could have anticipated with a reasonable degree of probability. Id.

{¶ 40} Barnett's assignment of error misconstrues the trial court's decision. The trial court discussed Duke's elevated standard of care and specifically found that reasonable minds could conclude that Duke could have reasonably anticipated Barnett's accident. Based on the evidence, the court further found that reasonable minds could conclude that Duke's written warning to Beazer was insufficient to satisfy its elevated standard of care as a public utility. Notwithstanding this determination, the trial court granted summary judgment to Duke on the basis of the open-and-obvious doctrine.

{¶ 41} In our disposition of Barnett's second assignment of error, we concluded that the trial court improperly granted summary judgment in favor of Beazer and Duke on the basis of the open-and-obvious doctrine. In light of our determination and the trial court's conclusion that a jury question exists as to whether Duke exercised the highest degree of care, Barnett's third assignment of error is overruled as moot. See App.R. 12(A)(1)(c).

{¶ 42} Assignment of error No. 4 is as follows:

{¶ 43} "The trial court erred by failing to consider Beazer's violation of OSHA regulations that further evidence a duty to Barnett."

{¶ 44} In Barnett's final assignment of error, he argues that the trial court erred in failing to consider Beazer's alleged violation of OSHA policies as further evidence of a duty of care to Barnett.

{¶ 45} The trial court did not address this argument in its decision. Generally, an appellate court does not address issues or arguments raised by the parties but not considered by the trial court. See *Estate of Heintzelman v. Air*

*Experts, Inc.*, Delaware App. No. 07CAE090045, 2008–Ohio–4883, 2008 WL 4356286, at ¶ 55. Accordingly, we conclude that it would be premature to address Barnett's argument for the first time on appeal. Id. at ¶ 56. Barnett's fourth assignment of error is therefore overruled.

{¶ 46} Based on the foregoing, we reverse the trial court's decision granting summary judgment in favor of Beazer and Duke, and we remand the matter to the trial court for consideration of the remaining issues and for further proceedings according to law and consistent with this opinion.

Judgment reversed
and cause remanded.

BRESSLER and YOUNG, JJ., concur.