[Cite as *Bacha v. Sam Pitzulo Homes & Remodeling, L.L.C.*, 2019-Ohio-878.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

THOMAS M. BACHA ET AL.,

Plaintiffs-Appellants,

v.

SAM PITZULO HOMES & REMODELING, LLC ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MA 0097**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CV 0823

**BEFORE:**
Gene Donofrio, Carol Ann Robb, Judges and Frank D. Celebrezze, Jr., Judge of the
Eighth District Court of Appeals, Sitting by Assignment.

---

**JUDGMENT:**
Affirmed in Part. Reversed in Part.
Remanded.

---

*Atty. Paul Flowers*, Terminal Tower, Suite 1910, 50 Public Square, Cleveland, Ohio
44113, *Atty. David Grant, Atty. Frank Gallucci, III,* Pelvin & Gallucci Co., L.P.A., 55
Public Square, Suite 2222, Cleveland, Ohio 44113, *Atty. Joseph Schiavoni,*
Schiavoni, Schiavoni, Bush & Muldowney, 87 Westchester Drive, Youngstown, Ohio
44515, for Plaintiffs-Appellants, and

*Atty. James Featherstone,* 585 South Front Street, Suite 210, Columbus, Ohio 43215, *Atty. Adam Buente,* Manchester Newman & Bennett, The Commerce Building, Second Floor, 201 East Commerce Street, Youngstown, Ohio 44503, for Defendants-Appellees.

Dated:
March 5, 2019

**Donofrio, J.**

**{¶1}** Plaintiffs-appellants, Thomas and Dawn Bacha, appeal the judgment of the Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees, Sam Pitzulo Homes & Remodeling, LLC and Sam Pitzulo & Associates General Contractors, Inc., on their claims for negligence, negligence per se, and loss of consortium.

**{¶2}** In March of 2014, appellees were hired as the general contractors for the Hoffman-Miller project (the project). The project's plan was to remodel the hallway and kitchen of a residential property located in Poland, Ohio. Appellees hired Cusimano Electric as the subcontractor to complete the necessary electrical work. Cusimano assigned Thomas Bacha to the project.

**{¶3}** On March 19, 2014, Thomas arrived at the project site at approximately 6:30 a.m. A meeting with all project staff was held at this time where Vincent Moretti, appellees' lead carpenter on the project, informed all workers that the floor panels in the kitchen were going to be removed in order to install insulation in the crawlspace. Aside from Moretti, appellees had two other employees at the project on this day: Gino Gentile and Mark Vinion. Thomas was also present at this meeting and heard the announcement regarding the floorboards being removed.

**{¶4}** At approximately 11:00 a.m., Thomas ascended a six-foot step ladder in order to split a wire and re-feed a circuit with an additional breaker. This particular task took place in the kitchen pantry doorway. While Thomas was on the ladder, appellees' employees began removing the floor panels in the kitchen. The removal of the floor panels exposed the joists that were supporting the floor. There was a large gap in between each of the joists. There was also approximately a three-foot drop in between the joists that ended at the concrete foundation of the home.

**{¶5}** One of the removed floor panels was approximately six inches away from the foot of Thomas' ladder where he was still working on his rewiring task. When Thomas descended the ladder, he fell in between the joists and suffered injuries.

**{¶6}** Appellants brought this action against appellees. Thomas asserted claims of negligence and negligence per se. Dawn, as Thomas' wife, asserted a claim of loss of consortium due to the injuries Thomas sustained.

**{¶7}** After discovery was completed, appellees filed a motion for summary judgment. Appellees argued that they owed Thomas no duty because he was the employee of an independent contractor. Appellees also argued that they owed no duty to protect Thomas from hazards which are inherently present due to the nature of construction work.

**{¶8}** Appellants argued that regulations such as the Occupational Safety and Health Act (OSHA) imposed a duty on appellees to create and maintain a safe workspace. Appellants argued that appellees breached that duty by removing the floor panels at the foot of Thomas' ladder and such breach was the proximate cause of Thomas' injury. Appellants also argued that appellees actively participated in creating the hazard (removing the floor boards) that injured Thomas.

**{¶9}** In a judgment entry dated May 4, 2017, the trial court granted appellees' motion for summary judgment. The trial court held that appellees did not owe Thomas a duty of care because: Thomas was the employee of a subcontractor; Thomas had been performing construction work for several years which made him aware that construction sites were dangerous; appellees did not direct or control Thomas; and appellees did not participate or assist Thomas on the date of his injury. Appellants timely filed this appeal on June 1, 2017. Appellants now raise a single assignment of error.

**{¶10}** Appellants' sole assignment of error states:

THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY GRANTING SUMMARY JUDGMENT AGAINST PLAINTIFF-APPELLANTS UPON THEIR PERSONAL INJURY CLAIM AGAINST DEFENDANT-APPELLEES [JUDGMENT ENTRY DATED MAY 4, 2017].

{¶11}   Appellants argue that summary judgment in favor of appellees on both their negligence and negligence per se claims was improper. Appellants argue that appellees had a common law and statutory duty to maintain a safe workspace for all of the people present at the project. Appellees' employees breached that duty when they removed the floorboard at the base of Thomas' ladder without informing him that that specific panel was removed and that such breach proximately caused Thomas' injuries.

{¶12}   An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the nonmoving party, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law, and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith*, 110 Ohio St. 3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10.

{¶13}   "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). The trial court's decision must be based upon "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action." Civ.R. 56(C). The nonmoving party has the reciprocal burden of specificity and cannot rest on the mere allegations or denials in the pleadings. *Id.* at 293.

{¶14}   Summary judgment is appropriate when there is no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.,* 104 Ohio App.3d, 598, 603, 662 N.E.2d 1088 (8th Dist. 1995), citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶15}   We will first address appellants' negligence claim. "The elements of a negligence claim are: (1) the existence of a duty owed by the defendant to the plaintiff;

(2) breach of that duty; (3) harm to the plaintiff caused by the breach; and (4) damages." *Lagowski v. Shelly & Sands, Inc.*, 7th Dist. No. 13 BE 21, 2015-Ohio-2685 ¶ 7 citing *Anderson v. St. Francis-St. George Hosp., Inc.*, 77 Ohio St.3d 82, 84, 671 N.E.2d 225 (1996). "Whether the defendant owes a duty to the plaintiff presents a legal question that depends upon the foreseeability of the plaintiff's injuries." *Id.* citing *Menifee v. Ohio Welding Products*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707 (1984). "An injury is foreseeable if a reasonably prudent person would have anticipated that any injury was likely to result from the performance or nonperformance of an act." *Id.*

{¶16} The relationship between appellees and Thomas was general contractor and the employee of a subcontractor. As such, the doctrine of active participation applies in order to determine if appellees owed Thomas a duty.

{¶17} The Ohio Supreme Court clarified the doctrine of active participation in *Bond v. Howard Corp.*, 72 Ohio St.3d 332, 650 N.E.2d 416 (1995). In *Bond*, the Court defined actively participated as "the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project." *Id.* at 337. The Court also held that in order for a general contractor to be liable for the injury to the employee of an independent contractor, the general contractor must actively participate in that injury. See *Id.* at 333-337.

{¶18} The crux of appellees' argument and the trial court's ruling is that because appellees did not direct the activities that lead to Thomas' injuries, they did not owe Thomas a duty of care. This argument has merit.

{¶19} Thomas was not appellees' employee, he was an employee of Cusimano Electric. (Bacha Dep. 66). Moretti testified that, whenever appellees used subcontractors, the subcontractors and appellees' employees were in charge of their respective tasks. (Moretti Dep. 13-14). Thomas also testified that his boss was Frank Cusimano. (Bacha Dep. 64-65). There is nothing in the record that indicates appellees or their employees were directing Thomas' work or gave or denied Thomas permission for the critical acts that led to his injuries. Pursuant to *Bond*, appellees did not actively participate in Thomas' injuries.

{¶20}    But appellants argue that an exception to the active participation doctrine applies because appellees controlled the critical variable, the removed floorboard near Thomas' ladder, which resulted in Thomas' injuries. "By retaining sole control over a critical variable in the working environment, a property owner can have as much influence over an employee's safety as when the property owner directly controls the activities of the employee. Thus, it follows that the property owner owes a duty of care to an employee of the independent contractor when the owner exerts or retains such control." *Sopkovich v. Ohio Edison Co.*, 81 Ohio St.3d 628, 634, 693 N.E.2d 233 (1998).

{¶21}    Appellants argue that this case is analogous to a decision from the Eighth District, *Chlopecki v. Gilbane*, 8th Dist. No. 98476, 2012-Ohio-6142. In *Chlopecki*, Gilbane was the general contractor on a construction site while Lorene Chlopecki was employed by an electrical subcontractor. *Id.* at ¶ 6. Lorene's task was to install smoke detectors. *Id.* This task required Lorene to be on a scaffold that had wheels that was furnished by her employer. The construction site had numerous holes in the floor as the result of ongoing installation of various systems. *Id.* at ¶ 8. These holes were covered with unsecured pieces of plywood which were spray painted fluorescent orange with the word "hole." *Id.*

{¶22}    One day, Lorene was on top of the scaffold and was looking for a worker to push her to the next installation site. *Id.* at ¶ 9. While Lorene was looking for a worker, the scaffold rolled over to one of the holes in the floor. *Id.* The plywood covering this hole shifted and the scaffold's wheel got caught in a crack in the floor, causing the scaffold to tip over. *Id.* Lorene brought a negligence action against Gilbane and the trial court eventually granted summary judgment in favor of Gilbane without an opinion. *Id.* at ¶ 1.

{¶23}    On appeal, the Eighth District held that "none of the evidence showed that Gilbane exercised any degree of control over Lorene's performance of her duties." *Id.* at ¶ 10. But the Eighth District held:

>  Gilbane did, however, exercise control over a "critical variable" of the workplace—the placement of the plywood boards covering the open holes on the floor. Gilbane understood that the placement of the boards posed a safety hazard. It specifically wrote a warning on the plywood and conducted safety meetings at which it warned employees that it had placed plywood over the holes in the floor. Having undertaken to place the plywood, Gilbane

was responsible for any negligence in how the plywood was placed. It admittedly chose not to fasten the plywood to the floor with screws lest the floor itself be damaged. Reasonable minds could differ on whether Gilbane exercised reasonable care in choosing not to fasten the plywood to the floor and whether it exercised reasonable care to ensure that the plywood was sufficiently anchored to the ground to prevent it from moving.

*Id.* at ¶ 11.

**{¶24}** Applying *Chlopecki*, appellees owed a duty to Thomas as they controlled the critical variable. Appellees' employees understood that the removal of the floorboards posed a safety hazard. Appellees' employees held a meeting at the beginning of the day where Moretti informed everyone that the floorboards were being removed. (Bacha Dep. 73). While Thomas did have general knowledge that appellees' employees were removing floorboards, there is a genuine issue of material fact as to whether Thomas knew that the specific floorboard near his ladder was removed.

**{¶25}** Thomas testified that he told Vinion not to move the floorboards near his work area. (Bacha Dep. 79-80). Thomas testified that he had no knowledge that the floorboard near his ladder was being or had been removed. (Bacha Dep. 81). While Vinion testified that someone informed Thomas that the floorboard near Thomas' ladder was being removed, he does not know who told Thomas about the floorboard. (Vinion Dep. 41). Gentile also does not recall if anyone told Thomas that the specific floorboard near Thomas' ladder was being removed. (Gentile Dep. 28-30).

**{¶26}** Appellees argue that the critical variable analysis outlined in *Chlopecki* does not apply. Appellees argue that in *Chlopecki*, the critical variable was the general contractor's negligent covering of the holes but no such hidden variable exists in this case because Thomas was aware that the plywood panels were being removed. Appellees argue that the critical act was in Thomas' control because Thomas was able to safely descend the ladder.

**{¶27}** Thomas testified that the materials he needed for his task were in the living room. (Bacha Dep. 89). He testified that he descended the ladder, placed both feet on the floor behind his ladder, and turned to his left to take a step. (Bacha Dep. 89-90). Thomas testified that he then "[t]urned to my left, and as I turned, I looked and took a

step, and there was no floor." (Bacha Dep. 89). Based on this testimony, there is a genuine issue of material fact concerning whether Thomas was aware of the floor openings. While Thomas was able to step off of the ladder safely, he testified that he did not notice the removed floor panel until he was mid step. Moreover, there is a genuine issue of material fact as to whether Thomas was notified that the specific floor panel at the foot of his ladder was to be removed or had been removed.

{¶28} Appellees also argue that numerous other cases contradict appellants' arguments and apply the active participation requirement to cases such as this. In *McClary v. M/I Schottenstein Homes, Inc.*, 10th Dist. No. 03AP-777, 2004-Ohio-7047, a subcontractor's employee fell through an open stairwell at a construction site and died as a result. *Id.* at ¶ 3. The employee's estate brought a negligence action against the general contractor. *Id.* at ¶ 4.

{¶29} When analyzing whether the general contractor controlled the critical variable (the open stairwell), the Tenth District analyzed deposition testimony which revealed that the general contractor employed an auditor to perform "sporadic safety audits and [check] construction sites to determine whether these sites complied with OSHA regulations." *Id.* at ¶ 40. But deposition testimony also revealed that the auditor did not inspect the open stairwell at issue. *Id.* The Tenth District concluded that because the auditor did not inspect the open stairwell, the general contractor did not exercise control over the open stairwell critical variable. *Id.* ¶ 42-43.

{¶30} The case at bar is distinguishable from *McClary*. In this case, appellees' employees were removing the floor boards which exposed the joists. (Vinion Dep. 40-41). The removal of the floorboards is the critical variable and it was under appellee's control. In *McClary*, no employee of the general contractor inspected the open stairwell critical variable.

{¶31} Appellees also argue *Baker v. Coast to Coast Manpower, LLC*, 3d Dist. No. 5-11-36, 2012-Ohio-2840 contradicts appellants' critical variable argument. In *Baker*, Baker was a truck driver working for Coast to Coast, a subcontractor of Best Buy. *Id.* at ¶ 2. One day, Baker cut a cable seal on his truck's trailer at a Best Buy distribution center. *Id.* The cable struck Baker in the eye and Baker filed an action against Best Buy for, among other things, negligence. *Id.* at ¶ 3. The trial court granted summary judgment in

favor of Best Buy on Baker's negligence claim finding Best Buy did not owe Baker a duty of care. *Id.* at ¶ 4.

**{¶32}** On appeal, the Third District held that summary judgment was proper because Best Buy did not actively participate in Baker's injury. *Id.* at ¶ 27-33. The Third District affirmed summary judgment on the negligence claim against Best Buy because: Best Buy never trained Coast to Coast's employees, Best Buy solely relied on Coast to Coast to perform its functions, Baker was told to bring any concerns to Coast to Coast employees, and Best Buy did not have specific control over the specific activity giving rise to Baker's injury. *Id.* at ¶ 27-29. But the Third District in *Baker* did not perform a critical variable analysis.

**{¶33}** *Baker* is also distinguishable because it dealt with a truck driver breaking a seal on his own truck and not a construction site. The critical variable test would not apply because the only involvement Best Buy had in *Baker* was that it owned the distribution center where the injury occurred. The only control Best Buy had was making everyone, including employees of independent contractors, wear orange vests while on site. *Id.* at ¶ 29. In this case, appellees' employees removed a plywood floor panel at the foot of Thomas' ladder which implicates a critical variable analysis.

**{¶34}** Appellants also argue that *Barnett v. Beazer Homes Invests., L.L.C.*, 180 Ohio App.3d 272, 905 N.E.2d 226, 2008-Ohio-6756 (12th Dist.2008), applies to its critical variable argument. In *Barnett*, Barnett was a subcontractor to Beazer, the owner and general contractor. *Id.* at ¶ 2. Barnett was installing gutters on a home that Beazer both owned and was the general contractor. *Id.* While installing a portion of the gutters, the gutters came into contact with an active power line which injured Barnett. *Id.* at ¶ 3. Neither Barnett nor another subcontractor helping Barnett noticed the power line prior to Barnett's shock. *Id.*

**{¶35}** Barnett brought a negligence action against Beazer alleging Beazer owed him a duty to maintain the premises in a safe condition and warn him about the power line. *Id.* at ¶ 4. The trial court granted summary judgment in favor of Beazer holding that Beazer owed no duty to Barnett because he was engaged in inherently dangerous work and because the power line hazard was open and obvious. *Id.*

**{¶36}** On appeal, the Twelfth District held that Beazer did not actively participate in Barnett's injuries because Beazer only maintained a general supervisory role over Barnett's activities. *Id.* at ¶ 19. But the Twelfth District held that reasonable minds could conclude that Beazer controlled the critical variable, contacting the energy company in order to have the line de-energized. *Id.* at ¶ 25. The Twelfth District also noted that the evidence indicated Beazer was the only party that knew of the hazard of the line and the need to contact the energy company to have it de-energized. *Id.*

**{¶37}** Appellees argue that *Barnett* is factually distinguishable from the case at bar. Appellees argue that Beazer had complete control over de-energizing the power line. Appellees argue this fact distinguishes the case at bar because Thomas had knowledge that the floor panels were being removed and the fact that the floor panels were removed was open and obvious. But the fact that the hazard was potentially open and obvious was also addressed in *Barnett*. Barnett testified that nothing obstructed his view of the power lines and if he had looked up, he would have seen the wires. *Id.* at ¶ 33.

**{¶38}** *Chlopecki* and *Barnett* are persuasive. Genuine issues of material fact exist in this case as to whether appellees were in control of the critical variable that led to Thomas' injury and as to whether Thomas had knowledge of the removal of the floorboard under his ladder. Because genuine issues of material fact exist, the trial court erred in granting summary judgment in favor of appellees on appellants' negligence claim.

**{¶39}** Appellants also argue that the frequenter statute codified at R.C. 4101.11 imposes a duty on appellees. "Every employer * * * shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof * * * and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters." R.C. 4101.11. This court has held that the frequenter statute does not impose a duty when the subcontractor is in an inherently dangerous setting. *Salanki v. Doug Freshwater Contracting, Inc.*, 7th Dist. No. 06-JE-39, 2007-Ohio-6703, ¶ 54-58. An active construction site is an inherently dangerous setting. *Id.* Because Thomas was injured at an active construction site, the frequenter statute does not impose a duty on appellees.

**{¶40}** Next, appellants argue that the trial court erred when it granted summary judgment on their negligence per se claim. In order for a statute to impose negligence per

se, the statutory requirement must be stated with sufficient specificity. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496, 727 N.E.2d 1277 (2000). Normally, when a legislative enactment imposes a specific duty for the safety of others, a violation of that statute constitutes negligence per se. *Chambers v. St. Mary's School*, 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998).

**{¶41}** Appellants argue that appellees owed Thomas a duty under various OSHA regulations. Specifically, appellants point out the following regulations: 29 C.F.R. 1926.16 (Rules of Construction), 29 U.S.C. 654(a) (Duties of Employers and Employees), and 29 C.F.R. 1910.22 (General Requirements [regarding walking and working surfaces]).

**{¶42}** The Ohio Supreme Court has held that "a violation of OSHA does not constitute negligence per se." *Hernandez v. Martin Chevrolet, Inc.*, 72 Ohio St.3d 302, 649 N.E.2d 1215 (1995). Thus, the trial court properly granted appellees' motion for summary judgment on appellants' negligence per se claim.

**{¶43}** Accordingly, appellants' sole assignment of error has merit in part as it pertains to their negligence claim and is sustained in part.

**{¶44}** For the reasons stated above, the trial court's judgment on appellants' negligence per se claim is hereby affirmed. The trial court's judgment on appellants' negligence claim is hereby reversed and this cause is remanded for further proceedings pursuant to law and consistent with this opinion.

Robb, J., concurs

Celebrezze. J., concurs

[Cite as *Bacha v. Sam Pitzulo Homes & Remodeling, L.L.C.*, 2019-Ohio-878.]

_____

For the reasons stated in the Opinion rendered herein, appellants' sole assignment of error has merit in part and is sustained in part. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed as to appellants' negligence per se claim.  The judgment is reversed as to appellants' negligence claim and appellants' loss of consortium claim. This matter is hereby remanded to the trial court for further proceedings on appellants' negligence claim according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**