[Cite as *Morris v. Rorick*, 2019-Ohio-3946.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CHARLES C. MORRIS | JUDGES:<br>Hon. William B. Hoffman, P.J |
| Plaintiff-Appellant | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 2018CA00167 |
| COLLIER CONSTRUCTION | |
| Defendant-Appellee | O P I N IO N |

CHARACTER OF PROCEEDINGS:     Appeal from the Stark County Court of
Common Pleas, Case No. 2017-CV-
01125

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     September 26, 2019

APPEARANCES:

For Plaintiff-Appellant

LARRY V. SLAGLE
2859 Aaronwood Ave., N.E.
Massillon, Ohio  44646

KATHLEEN O. TATARSKY
236 Third Street, S.W.
Suite 100 Carnegie Building
Canton, Ohio  44702

For Defendant-Appellee

MARIA PLACANICA
50 South Main Street
Akron, Ohio  44308

*Hoffman, P.J.*

**{¶1}** Appellant Charles C. Morris appeals the summary judgment entered by the Stark County Common Pleas Court dismissing his negligence and premises liability action against Appellee Collier Construction Co.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On December 11, 2013, Appellant was employed as a drywall hanger for Eric Griggy dba Custom Drywall, during construction of a home being built for Timothy and Tiffany Barta.  Appellee was the general contractor on the project.

**{¶3}** Appellant arrived at the jobsite around 8:00 a.m. on December 11, 2013, intending to finish drywall on the walls and ceiling in the garage.  Specifically, Appellant intended to tape on the bead, a process whereby he used a paper and vinyl substance to cover the corners before applying compound.  Appellant began his work in the garage, working from the back to the front.  He used scaffolding where needed to reach the area in which he was working.

**{¶4}** Appellant took at least two smoke breaks during the day.  The first time, he unlocked the left garage door in order to lift it to exit the garage.  He left the door unlocked.  While working, he saw someone enter and exit the garage four or five times.  He believed it to be one of the people working on the stucco on the exterior of the garage.

**{¶5}** Also on December 11, 2013, Joseph Dagenhard was working for Rorick's Inc., a subcontractor hired to do stucco work on the exterior of the Barta residence.  Materials used by Rorick were stored inside the garage.  Dagenhard raised the garage door while Appellant was working on scaffolding inside the front of the garage.  Appellant was knocked off the scaffolding and onto an extension ladder on the floor of the garage, fracturing his right foot and ankle.

**{¶6}** Appellant filed the instant action for negligence and premises liability against Rorick, the Bartas, Griggy, Dagenhard, and Appellee on May 30, 2017. Appellee filed a motion for summary judgment on December 22, 2017, claiming as the general contractor, it owed no duty to Appellant, who was the employee of a subcontractor. The trial court granted the motion on September 20, 2018. Appellant settled with or dismissed the remaining defendants, and filed a motion to reconsider the summary judgment in favor of Appellee. The trial court denied the motion to reconsider and entered a final appealable order dismissing the action against Appellee.

**{¶7}** It is from the October 25, 2018 judgment Appellant prosecutes this appeal, assigning as error:

I. THE TRIAL COURT ERRED WHEN IT GRANTED COLLIER CONSTRUCTION'S MOTION FOR SUMMARY JUDGMENT AND CONCLUDED AS A MATTER OF LAW THAT MORRIS COULD NOT RECOVER FROM COLLIER CONSTRUCTION FOR THE INJURIES HE SUSTAINED ON THE JOB SITE.

II. THE TRIAL COURT ERRED WHEN IT GRANTED COLLIER CONSTRUCTION'S MOTION FOR SUMMARY JUDGMENT AND DENIED MORRIS' MOTION TO RECONSIDER. A GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO WHETHER A DUTY OF CARE RESTED WITH THE GENERAL CONTRACTOR COLLIER CONSTRUCTION UNDER THE AIA CONTRACT.

**{¶8}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

**{¶9}** Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party

has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

{¶10} It is under this standard we review Appellant's two assignments of error.

I.

{¶11} In his first assignment of error, Appellant argues the court erred in finding Appellee owed no duty to him pursuant to principles of common law negligence and R.C. 4101.11 and .12, which provide:

Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

{¶12} R.C. 4101.11.

No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe.

**{¶13}** R.C. 4101.12.

**{¶14}** The duty owed to frequenters, including employees of other companies, is no more than a codification of the common-law duty owed by an owner or occupier of premises to invitees, requiring the premises be kept in a reasonably safe condition, and warning be given of dangers of which he has knowledge. *See, e.g., Westwood v. Thrifty Boy*, 29 Ohio St.2d 84, 58 O.O.2d 154, 278 N.E.2d 673, paragraph one of the syllabus (1972). The duties set forth in R.C. 4101.11 and 4101.12 generally do not apply, however, to a general contractor's duty to an independent contractor, when the independent contractor engages in inherently dangerous work. *Frost v. Dayton Power & Light Co.*, 138 Ohio App.3d 182, 190, 740 N.E.2d 734, 740 (4th Dist. Adams 2000), *amended*, 4th Dist. Adams No. 98 CA 6692000 WL 1029141.

**{¶15}** Appellant first argues he was not injured while participating in an inherently dangerous activity. We disagree.

{¶16} In *Bond v. Howard Corp.*, 72 Ohio St.3d 332, 1995-Ohio-81, 650 N.E.2d 416 (1995), the plaintiff, an independent contractor's employee, was constructing a wall at a construction site. The materials the plaintiff needed to perform his work were located near an unguarded opening on the second floor of the site. As the plaintiff was gathering some materials, he fell through the unguarded opening and sustained severe injuries. The Ohio Supreme Court applied the inherent danger exception, although arguably falling through an unguarded opening is not an inherent danger of constructing a wall. The *Bond* court held a construction site is inherently a dangerous setting. *Id.* The *Bond* decision implies in determining whether a task involves inherent dangers, the court should not construe "inherent dangers" narrowly, but rather should examine the circumstances surrounding the work activities as well as the work itself to determine whether the performance of a task contains elements of real or potential danger. *Frost, supra,* at 195, 740 N.E.2d at 744.

{¶17} Appellant argues he was not injured by an inherently dangerous activity, but rather by Dagenhard's failure to exercise "any care at all" when he knew Appellant was applying drywall on scaffolding at the front of the garage. Brief of Appellant, p. 11. However, as recognized by the Ohio Supreme Court in *Bond,* a construction site is an inherently dangerous setting. We find working on scaffolding on a construction site is an inherently dangerous activity, and the trial court did not err in applying the inherent danger exception in the instant case.

{¶18} Ordinarily, a general contractor who engages the services of an independent contractor owes no duty of care to the employees of the independent contractor. *Sopkovich v. Ohio Edison Co.*, 81 Ohio St.3d 628, 693 N.E.2d 233, 1998–

Ohio–341 (1998). However, when a general contractor engages the services of an independent sub-contractor and "actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, [the general contractor] can be held responsible for the injury or death of an employee of the independent contractor." *Hirschbach v. Cincinnati Gas & Elec. Co.*, 6 Ohio St.3d 206, 452 N.E.2d 326, syllabus (1983). "'[A]ctive participation' includes situations in which a property owner exercises control over the work activities of the independent contractor, and also includes situations in which a property owner exercises control over a critical aspect of the employee's place of employment or 'working environment.'" *Sopkovich*, *supra* at 635, 693 N.E.2d 233.

**{¶19}** The cases cited by Appellant in support of his argument Appellee owed him a duty of care all apply the exception in which a general contractor exercised control over a critical aspect of the place of employment or working environment, rather than the general contractor exercising control over the work activities of the independent contractor.

**{¶20}** In *Chlopecki v. Gilbane*, 8th Dist. Cuyahoga No. 98476, 2012-Ohio-6142, the plaintiff, an employee of a subcontractor, fell from a scaffolding when the wheel of the scaffolding fell into a hole in the floor which the general contractor had covered with plywood, but failed to properly fasten the plywood. In finding a duty of care existed, the Court of Appeals for the Eighth District held:

> Gilbane did, however, exercise control over a "critical variable" of the
>
> workplace—the placement of the plywood boards covering the open holes

on the floor. Gilbane understood that the placement of the boards posed a

safety hazard.  It specifically wrote a warning on the plywood and conducted

safety meetings at which it warned employees that it had placed plywood

over the holes in the floor. *Having undertaken to place the plywood, Gilbane*

*was responsible for any negligence in how the plywood was placed*. It

admittedly chose not to fasten the plywood to the floor with screws lest the

floor itself be damaged. Reasonable minds could differ on whether Gilbane

exercised reasonable care in choosing not to fasten the plywood to the floor

and whether it exercised reasonable care to ensure that the plywood was

sufficiently anchored to the ground to prevent it from moving.

**{¶21}** *Id.* at ¶ 11 (emphasis added).

**{¶22}**  In *Barnett v. Beazer Homes Invests.*, L.L.C., 12th Dist. Butler No. CA2007-11-276, 180 Ohio App.3d 272, 2008-Ohio-6756, 905 N.E.2d 226, Barnett was an employee of a subcontractor installing gutters on a house, and was injured when he came into contact with high voltage electric wires.  Beazer was the general contractor on the site.  Three weeks prior to Barnett's injury, a siding company was working on the house when a ladder fell into the wires, causing an outage to a nearby trucking company.  The electric company issued a safety warning to Beazer, and told Beazer no further work could be done on the side of the house near the wires without first contacting the electric company to have the lines de-energized.  Beazer failed to have the line de-energized before Barnett began working on the side of the house, and scheduled Barnett's employer to install the gutters without informing them the line would need to be de-energized before

they could start. The court found Beazer retained control over de-energizing the line, a critical variable in Barnett's employment. *Id.* at ¶25.

{¶23} In *Cefaratti v. Mason Structural Steel Co.*, 136 Ohio App.3d 363, 365, 736 N.E.2d 913, 914 (8th Dist. Cuyahoga 1999), Cefaratti, an employee of a subcontractor, fell from a stairwell while installing pipes at a building construction site. Prior to the fall, the general contractor had a guard rail on the stairwell, but had removed the rail without warning the workers to avoid the area. The court held there was "a genuine issue of material fact as to whether appellee is responsible for the absence of guard railing and whether the absence of guard railing constituted a critical variable in the workplace." *Id.* at 366, 736 N.E.2d at 914.

{¶24} We find the instant case distinguishable from the cases relied upon by Appellant. In the cases cited above, the general contractor took affirmative control over a variable in the workplace, which ultimately caused injury to the employee of the subcontractor, i.e., failing to properly secure plywood over an opening in the floor, failing to have electrical wires de-energized despite a prior incident and warning from the electric company, placing a guardrail but later removing the rail without notifying the workers. Appellant's claim is premised upon Appellee's failure to place warning signs on the garage door. However, there is no evidence Appellee had exercised control over the opening and closing of the garage door prior to the day on which Appellant was injured. We find the trial court did not err in finding Appellee owed no duty of care to Appellant.

{¶25} Finally, Appellant argues the court did not consider the affidavit of Jeffrey B. Jones, an expert in the field of construction management, opining Appellee was negligent in several respects, and such negligence was a proximate cause of the injuries

to Appellant. However, the trial court found as a matter of law Appellee owed no duty of care to Appellant, and therefore did not reach issues of negligence and proximate cause set forth in the Jones affidavit.

**{¶26}** The first assignment of error is overruled.

II.

**{¶27}** In his second assignment of error, Appellant argues Appellee assumed a contractual duty of care by virtue of a contract it entered with the Bartas.

**{¶28}** Paragraph 10.2 of AIA Document A201-2007 provides:

§ 10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to

1. employees on the Work [site] and other persons who may be affected thereby;

§ 10.2.2 The Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, codes, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.

§ 10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and

other warnings against hazards, promulgating safety regulations and notifying owners and user of adjacent sites and utilities.

**{¶29}** While a general contractor may explicitly assume responsibility for workers' safety, many contract provisions between general contractors and subcontractors do not give rise to such assumed responsibility. *Nicholson v. Turner/Cargile*, 107 Ohio App.3d 797, 805, 669 N.E.2d 529, 534–35 (10th Dist. Franklin 1995). Contract provisions which do not create such a duty include provisions: (1) assigning control over safety procedures to the general contractor, *Cafferkey v. Turner Const. Co.*, 21 Ohio St.3d 110, 112–13, 488 N.E.2d 189, 192 (1986); (2) retaining a general contractor's right to review details and construction; (3) requiring the work to be finished under an architect's and general engineer's direction and to their satisfaction, *Gilday v. S & R Playhouse Realty Co.* (June 14, 1990), Cuyahoga App. No. 57022, unreported, 1990 WL 82301 (June 14, 1990); (4) promising a general contractor will have a representative at the job site; (5) requiring a general contractor specify the work to be done by the subcontractor and specifying the items the general contractor will inspect; (6) requiring a subcontractor to replace personnel found to be incompetent; and (7) promising material supplied by the subcontractor will meet specifications. *Mount v. Columbus & S. Ohio Elec. Co.* (1987), 39 Ohio App.3d 1, 528 N.E.2d 1262, paragraph four of the syllabus (1987). *Nicholson, supra.*

**{¶30}** Contract language which is nothing more than "boilerplate" safety language common to all construction contracts does not create a duty from the general contractor to employees of a subcontractor. *Cafferkey, supra,* at 113. *See, also, Bond v. Howard Corp.,* 72 Ohio St.3d 332, 1995-Ohio-81, 650 N.E.2d 416 (1995) ("we reject appellants'

assertions that various contractual provisions involving Howard created a duty of care extending from Howard to employees of Valentine. The contractual provisions relied upon by appellants simply demonstrate that Howard retained general supervisory capacity over the construction project and, in particular, that it retained control over safety policies and procedures at the site.").

**{¶31}** We find the AIA contract is a boilerplate contract, containing boilerplate safety language insufficient to create a specific duty Appellee owed Appellant. The contract assigns control over safety procedures to the general contractor, which pursuant to the case law cited above is insufficient to give rise to a legal duty.

**{¶32}** Further, unlike the contract in *Cafferkey,* the contract at issue in the instant case is not between the general contractor and the subcontractor, but rather is between the general contractor and the homeowner. The record does not indicate or suggest Appellant was an intended third party beneficiary of the contract between the Bartas and Appellee. We find the court did not err in failing to find the AIA contract created a duty of care extending from Appellee to Appellant.

**{¶33}**  The second assignment of error is overruled.

**{¶34}**  The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur